**UNITED STATES, Appellee**

v.

**Guy A. JOHNSON, Airman, U.S. Air Force, Appellant.**

No. 94–0026.
CMR No. 30127.

U.S. Court of Appeals for the Armed Forces.

Argued May 15, 1995.

Decided Sept. 21, 1995.

For Appellant: *Captain Eric N. Eklund* (argued); *Colonel Jay L. Cohen* (on brief).

For Appellee: *Captain R. Scott Howard* (argued); *Colonel Thomas E. Schlegel, Colonel Jeffery T. Infelise, Captain Jane L. Harless* (on brief); *Captain Deborah M. Carr.*

*Opinion of the Court*

SULLIVAN, Chief Judge:

1. On July 27, 1992, appellant was tried by a general court-martial composed of a military judge sitting alone at Davis–Monthan Air Force Base, Arizona. In accor-

dance with a pretrial agreement he pleaded guilty to wrongfully using cocaine and failing to obey a lawful order, in violation of Articles 112a and 92, Uniform Code of Military Justice, 10 USC §§ 912a and 892, respectfully. Appellant was sentenced to a bad-conduct discharge, confinement and forfeiture of $200 pay per month for 6 months, and reduction to E-1. The convening authority approved the sentence on August 31, 1992.

2. The Court of Military Review[1] affirmed this case without opinion on June 17, 1993. Appellant, represented by new appellate counsel, appealed that decision to this Court raising an issue not asserted below. On June 23, 1994, this Court remanded appellant's case to the Court of Military Review for consideration of that issue. 40 MJ 304. On August 23, 1994, the Court of Military Review issued an unpublished Opinion of the Court Upon Further Review and again affirmed the findings of guilty and the sentence in this case.

3. This Court, on October 24, 1994, granted review in this case on the issue upon which our earlier remand to the Court of Military Review was predicated. It asks:

WHETHER APPELLANT'S PLEAS OF GUILTY TO CHARGE I AND ITS SPECIFICATION WERE IMPROVIDENT SINCE PROSECUTION EXHIBIT 5 CLEARLY INDICATES THAT APPELLANT WAS NEVER ISSUED A LAWFUL ORDER.

We hold that the entire record of trial established that appellant was issued a lawful order by Staff Sergeant (SSgt) Homan not to drink alcohol and, thus, he providently pleaded to violating that lawful order. *See generally United States v. Harrison,* 26 MJ 474, 476 (CMA 1988).

4. Appellant was charged with the offense of disobedience of a lawful order, in violation of Article 92. The particular specification stated:

SPECIFICATION: In that [appellant], having knowledge of a lawful order issued by SSgt Joseph R. Homan, to refrain from drinking alcoholic beverages while a minimum custody prisoner in the Davis–Mon-

than Air Force Base Detention Facility, an order which it was his duty to obey, did, at Davis–Monthan Air Force Base, Arizona, on or about 11 April 1992, fail to obey the same.

5. Appellant agreed to plead guilty to the above offense and entered into a stipulation of fact concerning it. That stipulation states:

On or about 5, 6 and 7 March 1992, the accused was tried by a general court-martial for the wrongful use of cocaine. He was found guilty and his sentence consisted of reduction in grade to E-2 and confinement for 10 months (Exhibit 4) [Court–Martial Order omitted]. The accused began serving his sentence on or about 7 March 1992 and is currently confined at the Davis–Monthan AFB confinement facility. On or about 6 April 1992, the accused was offered the opportunity to be a minimum custody/installation parolee and signed a document entitled "Rules for Minimum Custody/Installation Parolee" (Exhibit 5) [omitted]. *As a minimum custody/installation parolee and pursuant to a lawful order from SSgt Joseph R. Homan,* the accused was to refrain from drinking alcoholic beverages.

On or about 11 April 1992, the accused, despite having knowledge of the lawful order issued by SSgt Homan to refrain from drinking alcoholic beverages, an order which it was his duty to obey, did fail to obey said order by consuming alcoholic beverages while in confinement.

(Emphasis added.)

6. Prosecution Exhibit 5 is entitled "RULES FOR MINIMUM CUSTODY/INSTALLATION PAROLEE." Paragraph 1 states: "These rules are directive in nature and pertain to your actions and conduct outside the Detention Facility, while in status as either minimum custody prisoner or installation parolee." Furthermore, paragraph 1b, entitled UNAUTHORIZED ACTS, lists as prohibited conduct in subparagraph (1): "Drinking alcoholic beverages." Finally, paragraph 2 of this regulation states:

1. *See* 41 MJ 213, 229 n. * (1994).

Violations of any of the above rules may result in:

a. Reprimand or warning

b. Deprivation of one or more privileges

c. Loss of minimum custody status

d. Extra duties, not to exceed 2 hours a day for 14 days

e. Loss of good conduct time. (Adjudged & sentenced Prisoners Only)

3. Your signature below certifies that you have read, understand and will comply with the above rules and that a copy will be carried on your person at all times.

— — —

7. Appellate defense counsel argues that certain guilty-plea responses by appellant raised a substantial question of fact whether Sergeant Homan ever gave him a verbal order not to consume alcohol. He contends that the guilty-plea "inquiry makes it clear that the order the appellant believed he had received on 6 April 92 not to drink was a written, rather than a verbal order." Final Brief at 4. He finally contends that the installation prison rules that appellant received from Sergeant Homan were administrative in nature and not a proper subject for prosecution under Article 92. Final Brief at 5, citing *United States v. Felix*, 36 MJ 903, 910 (AFCMR 1993) (en banc), *aff'd*, 40 MJ 356 (CMA 1994).

■ 8. In determining the providence of appellant's pleas, it is uncontroverted that an appellate court must consider the entire record in a case. *United States v. Bester*, 42 MJ 75 (1995); *see also United States v. Martin*, 39 MJ 111 (CMA 1994); *United States v. Smith*, 34 MJ 319, 324 (CMA 1992). Appellant's record shows that he was charged with violating a lawful order from Sergeant Homan; he stipulated that he received such order from that person; and he admitted to the judge that he failed to obey "this lawful order issued by Staff Sergeant Homan." His appellate counsel now asks this Court to infer from certain other parts of the record that appellant received no verbal order from SSgt Homan but, instead, that he received only a copy of the adminis-

trative rules for parolees. He further asks this Court to hold as a matter of law that such installation prisoner rules are not a proper subject of an Article 92 prosecution. Final Brief at 4–5.

■ 9. We must again decline the invitation of the defense to speculate post-trial as to the existence of facts which might invalidate an appellant's guilty pleas. *See generally United States v. Harrison*, 26 MJ at 476. Such rejection is particularly appropriate in appellant's case where the inference sought to be drawn post-trial would contradict express admissions by the accused. *See also United States v. Davenport*, 9 MJ 364, 367 (CMA 1980). In any event, the cited responses of appellant do no more than establish that his drinking violated written prison rules handed to him by SSgt Homan. Such a fact is not inconsistent with SSgt Homan's also giving appellant an order not to drink on this particular occasion. *E.g., United States v. Traxler*, 39 MJ 476 (CMA 1994). Finally, it was appellant's pleas of guilty, his agreed-to stipulation of fact, and his failure to withdraw his pleas which made it unnecessary for the prosecution to call SSgt Homan at trial to clarify any ambiguity on this point. In these circumstances, appellant's guilty pleas must stand.

■ 10. One further matter needs to be addressed. The appellate court below in its second review of this case stated:

When the [then] Court of Military Appeals permits appellants to raise issues for the first time before them without requiring a showing of good cause, and returns the case for us to repeat our review of the case, it impeaches confidence in this Court's performance of its statutory duties and provides incentive to appellate counsel to engage in piecemeal litigation. . . .

Unpub. op. at 2.

11. The record in this case shows that there were different appellate defense counsel at our level and the level of the Court of Military Review. The record further shows that the new appellate defense counsel raised an issue at our Court that was not raised at the court below. Finally, our Court, in order

to facilitate the exercise of our duties under Article 67(a)(3), UCMJ, 10 USC § 867(a)(3) (1989) (which requires "good cause" for the grant of an issue), granted this new issue and remanded the case to the lower court specifically directing their initial review of the new issue.

12. With this record in mind, we are at a loss to understand the apparent position on "new issues" taken by the lower court. The mere change of counsel and the raising of a new issue does not constitute "good cause." Our Court can grant a case and take action on it under Article 67(a)(3) only for "good cause," and we did so in this case.

13. As far as the implication that an issue not raised at the lower level cannot be raised before us, we are sure the court below would not sanction a "potted plant" [2] role for appellate counsel with regard to new issues. The military appellate counsel are nationally known as aggressive, imaginative, and professional advocates who are not shy about raising proper new issues in a case no matter what the level of appeal. It is solely within this Court's discretion under Article 67 to determine whether an issue is properly raised. We are not bound by "the rules of procedure established by The [sic] Judge Advocates General under Article 66(f)." *See* unpub. op. at 2.

14. Let us reassure the court below that any remands from our Court are not to be considered a "practice [that] is ill advised," unpub. op. at 2; rather they are reflections of our respect and recognition of the high quality and expertise of the now-Courts of Criminal Appeals. That court and our Court both aim at the same high target—true justice for the servicemember. In this case, in order to insure justice being done at our level, this Court determined to exercise its judicial discretion in the form of a remand.

The decision of the United States Air Force Court of Military Review upon further review is affirmed.

Judges GIERKE and WISS concur.

COX, Judge (concurring in part and in the result):

15. I agree with Chief Judge Sullivan that the guilty pleas must stand. As to his views concerning the remand of the case and the response of the Court of Military Review *, I believe those views are personal and not of moment to the decision in this case.

16. However, I also will issue an essay sharing my views concerning the lamentations of Judges Young, Raichle, and Snyder. I do not use the word lamentations in the pejorative sense, for I, too, mourn the fact that we see far too much piecemeal litigation. Such does not promote the ends of justice. *See Murphy v. The Judges of the United States Army Court of Military Review,* 34 MJ 310 (CMA 1992). I, too, lament that the *administration* of justice is obviously hampered by our practice of allowing appellants to raise issues not litigated below for the first time before this Court. *Administration* of justice is not enhanced by granting eight enlargements of time to appellant's counsel for filing an original brief in the court below and, in all likelihood, we also granted enlargements of time. *Administration* of justice is not promoted by our remanding a case to a Court of Criminal Appeals, if indeed there is a sufficient record upon which we can resolve a case. All of these things are indeed true.

17. Furthermore, I am totally convinced that military appellate counsel would do a better job, become more competent and attentive to detail, have a better work ethic, and serve their clients better in the long run if we had ironclad rules to which we strictly adhered. Life would be simpler and our practice more professional if we refused to

---

2. The term "potted plant" is used in America's image-based society to distinguish passive non-players ("is a potted plant") from people of action ("is not a potted plant"). It is derived from Brendan V. Sullivan, Jr.'s, response to Senator Inouye, when the Senator was attempting to limit Mr. Sullivan's role in protecting his client

(Oliver North) from what Mr. Sullivan perceived as unfair questioning by the Senate staff during the 1987 Irangate Hearings: "Well sir, I'm not a potted plant. I'm here as the lawyer. That's my job."

* *See* 41 MJ 213, 229 n. * (1994).

accept briefs out of time, and if we dismissed petitions filed late for lack of jurisdiction, as is the practice in most state supreme courts. And if we refused to hear issues not raised before the lower courts, the likely result would be that counsel would start raising all issues below.

18. However, all of these things beg the question: How can we ensure that every servicemember not only has enjoyed the right to full and fair consideration of his case by a Federal court composed of civilian judges but also that every servicemember believes that to be true? One method, the one historically chosen by this Court, is to be paternalistic and grant tremendous leeway to young, often inexperienced military lawyers to help them ably represent their clients before this Court. We accept an appellant's petition on its merits; we listen to issues raised personally by an appellant; and we specify issues from time-to-time, issues not raised by appellate counsel.

19. Over the years, many of these practices have been criticized in both articles and lower-court opinions. I chose to leave the critics unnamed in this essay because they know who they are. They make valid points worthy of our consideration. However, notwithstanding the negative side of these paternalistic practices, all of them are designed to ensure that servicemembers are not slighted in any way, albeit, as our critics have noted, there is a price to be extracted for our paternalism.

20. Another way to ensure that every servicemember enjoys full and fair consideration of his or her case is to ask our sister courts, the Courts of Criminal Appeals of the various services, for help. Historically, that has not always been the case. And, quite naturally, there have been those who would criticize this Court for not heeding (even not reading!) the opinions issued by the courts below.

21. However, since my first day as a judge of this Court, I have firmly believed that military appellate judges reflect years and years of experience, wisdom, as well as unique knowledge and understanding of military organizations, customs, and traditions;

and we should take advantage of that talent. *See United States v. Johnson,* 21 MJ 211, 216 (CMA 1986) (Cox, J., concurring in the result); *United States v. Johanns,* 20 MJ 155, 161, 165 (CMA) (Cox, J., concurring in part and concurring in the result in part) ("while I must abide by the judgment of the majority below, I wish to make it clear that my deference to their factfinding expertise in the customs of that service in no way forecloses a different result from other service courts...."), *cert. denied,* 474 U.S. 850, 106 S.Ct. 147, 88 L.Ed.2d 122 (1985). In other words, I want the advice and opinions of our military appellate judges, and the best way to get it is to ask for it. Which we did here.

22. Lastly, a remand from this Court to our lower courts should not impeach confidence in the court's performance of its statutory duties; rather it should instill confidence in the ability of the lower court not only to administer justice, but indeed to do justice. In the final analysis, that is what we are all about.

CRAWFORD, Judge (concurring in the result):

23. I disassociate myself from the implications of the majority that, because of the change of appellate counsel, the failure to raise an issue on appeal could not be waived.

24. We have not addressed the question of waiver of an issue raised for the first time before this Court. *Cf. United States v. Smith,* 41 MJ 385 (1995). Absent a showing of good cause for failure to raise an issue or manifest injustice, this Court should not exercise its discretion to entertain an issue raised for the first time before this Court. *See, e.g., McCleskey v. Zant,* 499 U.S. 467, 489–96, 111 S.Ct. 1454, 1468–71, 113 L.Ed.2d 517 (1991); *Singleton v. Wulff,* 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976); *Hormel v. Helvering,* 312 U.S. 552, 557, 61 S.Ct. 719, 721–22, 85 L.Ed. 1037 (1941), *see also Ryder v. United States,* —— U.S. ——, ——, 115 S.Ct. 2031, 2037, 132 L.Ed.2d 136 (1995) (remand limited to cases in which issue was raised before the Court of Military Appeals).

25. The failure to invoke waiver absent such a showing prevents finality, taxes scarce resources, and encourages withholding of objections. *McCleskey v. Zant, supra.*

26. Applying the federal waiver rule is appropriate. Indeed, our system is already more protective than others and has a multitude of safeguards to ensure a fair and just review. Verbatim records of trials are required in many cases even though no issues are raised immediately after trial. Art. 54(c)(1), Uniform Code of Military Justice, 10 USC § 854(c)(1). New counsel are appointed, regardless of indigency, to critically analyze the records concerning the action of the prosecutors, defense counsel, judges, and other participants at the court-martial. Appellate defense counsel are free to raise many issues, including the ineffectiveness of the trial defense counsel. Additionally, the Code establishes the Courts of Criminal Appeals as the first-tier reviewing court and requires them to examine the findings and sentence to ensure that they are "correct in law *and fact.*" *See* Art. 66(c), UCMJ, 10 USC § 866(c) (emphasis added); *Ryder v. United States, supra.* If an issue is not raised by counsel, not specified and not addressed in an opinion, waiver should apply absent a showing of good cause for failing to raise the issue or manifest injustice. *See also United States v. Bigler,* 817 F.2d 1139, 1140 (5th Cir.1987). This rule would ensure no miscarriage of justice and preserve judicial resources.