UNITED STATES,

v.

Airman Jonathan L. SHAVRNOCH,
FR379–02–6461 United States
Air Force.

ACM31564 (f rev).

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 31 Jan. 1995.

Decided 27 June 1997.

Appellate Counsel for Appellant: Lieutenant Colonel Kim L. Sheffield and Major Kevin P. Koehler.

Appellate Counsel for the United States: Colonel Theodore J. Fink, Lieutenant Colonel Michael J. Breslin, and Captain Libby A. Brown.

Before PEARSON, MORGAN, C.H., II, and MORGAN, J.H., Appellate Military Judges.

OPINION OF THE COURT

UPON FURTHER REVIEW

MORGAN, C.H., II, Judge:

This case is before us for review following the set-aside of our decision by the United

States Court of Appeals for the Armed Forces (USCAAF) to consider an issue not raised before us originally, but raised for the first time in appellant's supplemental petition for grant of review to USCAAF. Upon remand, we specified the following issues:

### I.

Whether, without good cause shown, or unless a manifest injustice be threatened, failure to raise an issue before this Court in accordance with the rules of practice and procedure of the Courts of Criminal Appeals serves to waive this issue.

### II.

Whether, in the event the answer to issue I is affirmative, there was good cause for appellant's failure to raise said issue, or a manifest injustice would result if this court declined to review it.

### III.

Whether appellant's plea of guilty to the charge and specification alleging violation of AFR 215–7 constituted waiver.

### IV.

Whether, if the answer to specified issues I and III, above, is negative, or the answer to issue II, above, is affirmative, AFR 215–7 can be made the subject of a prosecution under the facts of this case.

We answer the first specified issue affirmatively. Because we plow new legal ground in so holding, and because our superior Court has remanded the case to us for consideration of the new issue, we further answer specified issue II affirmatively. Finally, we hold that appellant's plea of guilty to the charge and specification of drinking underage in violation of Air Force Regulation (AFR) 215–7 served to waive the question of whether it was punitive, thus answering specified issue III affirmatively. Our disposition of the first three issues moots the fourth and final issue.

*Background*

Early in 1995 appellant was convicted following mixed pleas of ten specifications under seven separate articles of the Uniform Code of Military Justice (UCMJ). These included indecent acts with a girl under 16, theft of mail, driving while drunk, conspiracy, assault with a firearm, drunk driving, and drinking underage. Court-martial members sentenced him to a bad-conduct discharge, confinement for 2 years, total forfeitures, and reduction to the lowest enlisted grade, airman basic.

On appeal to us, appellant brought two assignments of error—illegal pretrial punishment [1] and the factual and legal sufficiency of the indecent acts. We affirmed in a per curiam decision of June 11, 1996. Four days earlier, in a published decision, another panel of this court had decided *United States v. Hode,* 44 M.J. 816 (A.F.Ct.Crim.App.1996), *pet. denied,* 46 M.J. 113 (1996), holding that Air Force Instruction (AFI) 34–119, the successor regulation to that under which appellant was charged, was not punitive. A month later, appellant filed his petition for grant of review before USCAAF. In September, appellant filed his supplement to his petition for grant of review. There, for the first time, appellant alleged his plea of guilty to the charge of drinking underage in violation of AFR 215–7 was improvident. Noting that the issue was raised for the first time, but without finding the issue to be meritorious or that our original decision was erroneous, by order of April 4, 1997, USCAAF set aside our decision and returned the case to The Judge Advocate General of the Air Force to consider the new issue. We specified the above issues for expedited briefing on April 29, 1997.

### I.

*Whether, Without Good Cause Shown, or Unless a Manifest Injustice Be Threatened, Failure to Raise an Issue Before This Court in Accordance with the Rules of Practice and Procedure of the Courts of Criminal Appeals Serves to Waive the Issue*

■ For a considerable period of time, our superior Court and we have struggled with

---

1. Brought pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982).

this question. *See, e.g., United States v. Johnson,* 42 M.J. 443 (1995); *Murphy v. The Judges of the United States Army Court of Military Review,* 34 M.J. 310 (C.M.A.1992). It does little good to rehearse the differing viewpoints or to express still again the frustration associated with the practice of setting aside a decision of a lower court without a finding of error. It is enough to say that to date no definitive rule has emerged, and if the three sharply conflicting opinions in *Johnson* are any augury, one does not appear in the offing. As a result, we find ourselves in appellate never-never land, without order, boundaries, procedures, or rules. It is with a view towards correcting that situation, at least insofar as we are able with respect to Air Force litigants, that we proceed.

We begin with what we assume to be common ground—that piecemeal litigation is a bad thing, contributing to uncertainty, lack of finality, and instability. *Murphy,* 34 M.J. at 311 ("Piecemeal appellate litigation in capital cases, or for that matter, in any case, is counterproductive to the fair, orderly judicial process created by Congress."). Avoidance of piecemeal litigation requires the establishment, observance and enforcement of rules of appellate procedure. Appellate anarchy, on the other hand, leaves the appellate system vulnerable to exploitation in a manner incommensurate with the ends of justice.

■ Avoidance of piecemeal litigation leads to the general rule that a federal appellate court does not consider an issue not passed upon below. *Singleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976); *Hormel v. Helvering,* 312 U.S. 552, 556, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941). The general rule against considering on appeal issues not raised below is hardly

new to appellate practice. Dating to the 17th century English writ of error,[2] it is as firmly rooted in common sense as in the common law. A trial (or lower appellate) court cannot correct an error not identified to it.[3] Moreover, an opposing party has no opportunity to respond to the error, and, potentially, either correct or avoid it. Without principles of waiver or forfeiture, it profits the cunning litigant to sit mute in the face of supposed error, waiting to win on appeal, should it come to that, on an issue which might easily be avoided or cleared up now.

The principle of waiver and forfeiture is well understood in the context of trial. The Manual for Courts–Martial is replete with requirements that trial defense counsel timely declare an objection lest the issue be forfeited. *See, e.g.,* MANUAL FOR COURTS-MARTIAL, UNITED STATES (MCM), Part II, Rules for Courts–Martial (R.C.M.) (1995 ed.): Rules 912(f)(4) (waiver of challenge for cause); 910(j) (waiver of factual issues by guilty plea); 405(k) (waiver of objection to pretrial investigation); 707(e) (speedy trial issues); 801(g) (failure timely to raise defenses, objections or make motions before military judge). *See also* MCM, Part III, Military Rules of Evidence (MIL. R. EVID.) (1995 ed.): 103(a) (error may not be premised on ruling on evidence unless subject of timely objection); 311(i) (guilty plea waives all issues under Fourth Amendment).

Recent decisions in USCAAF and in our Court have underscored the importance we attribute to timely raising issues at the trial level, and the sometimes draconian consequences of failure in that respect. *See, e.g., United States v. Lloyd,* 43 M.J. 886 (A.F.Ct. Crim.App.1995), *aff'd,* 46 M.J. 19 (1997) (guilty plea forfeits issue of multiplicity in absence of plain error); *Faircloth* (failure to

---

**2.** R. MARTINEAU, MODERN APPELLATE PRACTICE: FEDERAL AND STATE CIVIL APPEALS § 1.1 (1983).

**3.** Our extraordinary powers under Article 66(c), UCMJ, 10 U.S.C. § 866(c), which appellant suggests supply a rationale for excepting our jurisprudence from the general rule, do not. Without going into the concept of "plain error," a topic exceeding the boundaries of this discussion, even in so-called merits cases we can and have specified issues which troubled us, even if not raised by either counsel. *See, e.g., United States v. Fair-*

*cloth,* 43 M.J. 711 (A.F.Ct.Crim.App.1995), *rev'd,* 45 M.J. 172 (1996). An affirmance, without opinion, in the face of an error not assigned, may fairly be construed as our decision that there was no error prejudicing an appellant warranting relief. It is ludicrous to suggest, therefore, that because we did not enumerate every "error" which we found unmeritorious using our powers under Article 66(c), that the general rule ought not to apply in our case.

raise issue of possessory interest in stolen proceeds of check forfeited issue).

Recently, the Supreme Court addressed itself to what it perceived to be a growing abuse of the appellate process, particularly with respect to abuse of the writ of habeas corpus, where a petitioner raised new issues in succeeding applications. The Court decried the practice, noting that the writ itself, though necessary, "strikes at finality."

> One of the law's very objects is the finality of its judgments. Neither innocence nor just punishment can be vindicated until the final judgment is known. "Without finality, the criminal law is deprived of much of its deterrent effect." ... [Successful writs] prejudice the government and diminish the chances of a reliable criminal adjudication.... Federal collateral litigation places a heavy burden on scarce federal judicial resources, and threatens the capacity of the system to resolve primary disputes.... [It] may give litigants incentives to withhold claims for manipulative purposes and may establish disincentives to present claims when evidence is fresh.

*McCleskey v. Zant,* 499 U.S. 467, 491, 111 S.Ct. 1454, 1469, 113 L.Ed.2d 517 (1991) (citations omitted).[4] The Court went on to observe the obvious, that *repetitive* applications for the writ, raising issues which could have been but were not litigated earlier, had all of the above-drawbacks ... and more.

> Far more severe are the disruptions when a claim is presented for the first time in a second or subsequent federal habeas petition. If "[c]ollateral review of a conviction extends the ordeal of trial for both society and the accused," the ordeal worsens during subsequent collateral proceedings. *Perpetual disrespect for the finality of*

*convictions disparages the entire criminal justice system.*

*McCleskey,* 499 U.S. at 492, 111 S.Ct. at 1469 (citations omitted, emphasis added).

To correct what it conceded to be an unmelodious score of abuse-of-writ standards, the Court went on to fashion a standard for the review of habeas petitions bringing issues not earlier raised, using its already established jurisprudence on procedural default,[5] the "cause and prejudice" standard. Unless a habeas petitioner, or one appealing in Federal court a State conviction alleging a ground for error not raised in the State appeal, met the cause and prejudice standard, the Federal courts were admonished not to grant review. "Cause" requires a petitioner to show "some objective factor external to the defense impeded counsel's efforts" to raise the claim in State court. *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986). Examples include: a showing that the factual or legal basis for the new claim was not reasonably available to counsel; that interference by State officials made compliance with the State's rules impracticable; or ineffective assistance of counsel. *McCleskey,* 499 U.S. at 494, 111 S.Ct. at 1470. Once an appellant has established good cause, he must then show actual prejudice resulting from the newly-assigned error. *Id.*

The Court left open a special class of cases wherein failure to meet the cause-prejudice standard should nevertheless be excused. This was for "extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime. We have described this class of cases as implicating a fundamental miscarriage of justice." *Id.*

*California,* 503 U.S. 653, 112 S.Ct. 1652, 118 L.Ed.2d 293 (1992) (vacation of stay of execution where appellant sought through 42 U.S.C. § 1983 action to circumvent *McCleskey* rule and to press Eighth Amendment claim contesting execution by lethal injection).

---

**4.** It is worth remarking that *McCleskey* was a death penalty case, where there scarcely could be a more compelling argument to review a question even though it had not been earlier raised. That the Supreme Court was unwilling to do so cements our conviction that it attached immense importance to the question of finality, upon which *McCleskey* hinged. Subsequent history discloses the Court's continued resolve in enforcing the cause-prejudice rule and its unwillingness to tie its application solely to habeas cases. *Gomez v. District Court for the Northern District of*

**5.** Procedural default refers to the practice of raising, in an appeal to a Federal court, an issue which could have been, but was not, raised in litigation in State court.

We adopt this standard for the review of issues which could have been, but were not, raised before us in the first instance. Nothing in the peculiarities of military appellate practice counsels against adherence to the cause-prejudice standard laid out by the Supreme Court, and the ends of justice are better served if litigants understand that there are rules to appellate practice just as there are rules to trial practice. The Supreme Court has itself employed the cause-prejudice rule in an appeal of a USCAAF decision, thus affording the same measure of respect and comity to the United States Court of Appeals for the Armed Forces, as it declared was due to State courts in *McCleskey* and *Murray*. It declined even to consider a new *argument* on an issue before it where that argument was not first presented to USCAAF. *Ryder v. United States,* 515 U.S. 177, 185–87, 115 S.Ct. 2031, 2037, 132 L.Ed.2d 136 (1995) (Court would not consider harmless error argument where government failed to argue it to USCAAF).

In deciding as we do, we do not presume to restrict in the least our superior Court's authority to grant review where, as, and if it sees fit. After all, Article 67(a)(3) of the UCMJ, 10 U.S.C. § 867(a)(3), leaves the contours of "good cause shown" to the discretion of the Court. They are, in this respect at least, quite clearly the 800 pound gorilla.[6] Like USCAAF, however, the Courts of Criminal Appeals have their own rules of practice and procedure. Among those are requirements for the timely filing of an assignment of errors, briefs, and motions for reconsideration or to consider a new issue out of time. The set-aside of a Court of Criminal Appeals' decision without inquiry into its merits, nor even a decision as to whether there was "good cause shown" for review, not only nullifies those rules at a stroke, but handsomely rewards their disregard. Our research has revealed no other appellate jurisprudence wherein a lower court is summarily reversed

without a finding of error based solely upon a situation completely within an appellant's control.

Unfashionable though it may be to speak in behalf of the prosecution, it is wise to remember that the government has a right to due process and fairness in the appellate realm as well. To paraphrase the Supreme Court, the practice of setting aside a decision upon the basis of a mere allegation of error serves to frustrate the legitimate interest of the military community to punish offenders and the good faith efforts of this Court to honor the constitutional rights of a defendant. *Murray,* 477 U.S. at 487, 106 S.Ct. at 2644–45.

> Rules of procedure ... are not mere naked technicalities.... [R]easonable adherence to clear, reasonable and known rules of procedure is essential to the administration of justice. Justice cannot be administered in chaos.... If the courts must stop to inquire where substantial justice on the merits lies every time a litigant refuses to abide [by] the reasonable and known rules of procedure, there will be no administration of justice.

*United States v. Seigel,* 168 F.2d 143, 146 (D.C.Cir.1948) (footnote omitted).

The *administration* of justice and justice need not be at war, nor should the former be seconded to the latter. Rather, they should be mutually reinforcing. *Cf. Johnson,* 42 M.J. at 446–7 (Cox, J., concurring). Requiring of appellate counsel no more than we demand of less-experienced trial defense counsel is simple fairness—fairness we are obliged as judges to consider with respect to both parties in any litigation.[7] We see nothing in Article 66(c) requiring us to mash our thumb on the side of the scale of one party or the other to promote the "perception" of fairness at the sacrifice of its realization, or to coddle appellate counsel while flogging the

---

**6.** Martineau, Robert J., *"Considering New Issues on Appeal: The General Rule and the Gorilla Rule,"* 40 Vand. L.Rev. 1023 (1987). We are encouraged to note, however, that USCAAF has recently amended rule 4b of its Rules of Practice and Procedure to require extraordinary writs to first be brought in the appropriate Court of Crim-

inal Appeals, prohibiting filing at USCAAF in the first instance "absent good cause."

**7.** It is thus more than a little ironic to observe that the dispositive law on the issue *sub judice* just happens to be founded on the principle of waiver at the trial level.

trial bar. Such is the very antithesis of justice, and of judging.

A procedural system which permits an endless repetition of inquiry into facts and law in a vain search for ultimate certitude implies a lack of confidence about the possibilities of justice that cannot but war with the effectiveness of underlying substantive commands.... There comes a point where a procedural system which leaves matters perpetually open no longer reflects humane concern but merely anxiety and a desire for immobility.

*McCleskey*, 499 U.S. at 492, 111 S.Ct. at 1469, quoting Paul M. Bator, *Finality in Criminal Law and Federal Habeas Corpus for State Prisoners*, 76 HARV. L.REV. 441, 452–453 (1963).

■ As we said earlier, we do not purport to establish a rule which in its application would only apply to USCAAF, and thus be, practically speaking, irrelevant. Much as we might wish to recommend adoption of the Supreme Court's rule with respect to new issues on appeal to our brethren above, in the end it must be acknowledged that the rule is, even for Article III courts, permissive in nature. An appellate court, especially one endowed with discretionary review, may *always* decide to review any issue it pleases. It can, as well, specify new issues not raised below or by counsel. What our holding does is to establish a disciplined, objective framework structuring our treatment of issues brought before us on remand which were not brought in the first instance. It gives counsel for both parties an opportunity to measure their arguments against a known standard, and to aim those arguments against a fixed target. It restores a measure of predictability to the appellate process, reinforces observance of appellate practice and procedure, and supplies counsel a legal context in which to advance their arguments.

Appellant in this case was hardly disabled from bringing this issue before us in the first place. *Hode* was decided four days before we released our decision in appellant's case. For at least 30 days thereafter appellant was entitled to request us to reconsider our ruling in the light of *Hode*. *See* Rule 19, COURTS OF CRIMINAL APPEALS RULES OF PRAC-

TICE AND PROCEDURE, 44 M.J. LXXI (1996). In addition, this Court has been generous in accepting and considering petitions for supplemental assignments of error, even those brought out of time. *See, e.g., United States v. Pedrazoli*, 45 M.J. 567 (A.F.Ct.Crim.App. 1997) (first of many *ex post facto* cases in which a supplemental assignment of error was permitted).

It has been suggested, however, in other contexts, that Courts of Criminal Appeals lose "jurisdiction" once a petition for grant of review is filed with USCAAF. This belief may serve to explain the practice of vacating our decisions as a requisite to a remand to decide a new issue. Of course, neither US-CAAF's nor our own rules of appellate procedure can enlarge or restrict jurisdiction. *See, e.g.,* Rule 4(c), RULES OF PRACTICE AND PROCEDURE FOR THE UNITED STATES COURT OF APPEALS FOR THE ARMED FORCES, 40 M.J. LXIV (1994) ("These Rules shall not be construed to extend or to limit the jurisdiction of the United States Court of Appeals for the Armed Forces as established by law."). Certainly, nothing in the enabling statutes for the two courts establishes a jurisdictional bar to a remand. We suspect, without knowing, that the practice stems more from principles of comity, *viz.,* that an appeal should not simultaneously lie in two vertically tiered courts. Assuming that to be the case, nothing prevents our superior Court from, in appropriate cases, denying without prejudice a petition for grant of review to enable the lower Court to consider a new issue. Likewise, nothing prevents, and prudent advocacy commends, that counsel (or a new counsel) discovering an issue not raised below consider first attempting to bring it up as a supplemental assignment of error or a petition for reconsideration. Should a petition for grant of review be extant, it may, with USCAAF's permission, be withdrawn without prejudice.

The above procedure does nothing to deny an appellant's day in Court, or chill the advancement of meritorious new issues. Meritorious supplemental assignments can and will be raised, and decided—first by courts of criminal appeals, and, should a grant of review from USCAAF follow, by them as well. What this procedure does accomplish is to

place the decision on whether a litigant is entitled to disregard a given Court's rules of practice and procedure where it belongs—with that Court itself. It has the additional advantage of avoiding the jurisprudential limbo into which a case is cast when an opinion is set aside without a finding of error.

## II.

*Whether Appellant's Failure to Raise the Issue Was Justified by Good Cause or a Manifest Injustice Would Result if the Court Declined to Review It*

■ Our review of Supreme Court guidance on the application of the cause-prejudice standard to the raising of new issues on appeal would facially seem to exclude appellant's case. To be sure, there was a change in appellate counsel between the original assignment of error and our decision. That has, in the past, been sufficient for our superior Court. *Johnson,* 42 M.J. at 445. But that of itself is insufficient cause in federal jurisprudence, and in any event appellant already had his new counsel at the time of the decision in *Hode,* the precipitating event.

That said, counsel faced a Hobbesian choice at the time of *Hode.* Although he could have, and should have, petitioned for reconsideration on the basis of *Hode,* past practice and the majority holding in *Johnson* gave him every reason to pass this Court by in favor of USCAAF. Indeed, there was everything to gain and nothing to lose. A year has passed since our original decision, and over 2 1/2 years since appellant's conviction. Presumably appellant has completed his confinement, but, with an unexecuted discharge, has kept his green ID card with all the entitlements that represents. We will not fault counsel or appellant for taking an appellate tack which historically offered the most promise. Since the "legal basis of the claim" arose more-or-less contemporaneously with our decision, we decide that there is good cause for us to consider it. Appellant likewise meets the prejudice prong of the test, since conviction under an arguably non-

punitive regulation presumably had some influence on his sentence.

## III.

*Whether Appellant's Plea of Guilty to Violation of AFR 215–7 Constituted Waiver*

■ Hode disputed the punitive nature of AFI 34–119 from the outset, at trial, and before us. He pled not-guilty to the charge. Appellant, on the other hand, never raised the issue of the punitive nature of AFR 215–7 and pled guilty at trial to underage drinking in violation thereof. Post–*Hode,* another panel of our Court decided, over the vigorous dissent of our then-Chief Judge, *United States v. Bivins,* 45 M.J. 501 (A.F.Ct.Crim. App.1996). *Bivins* reversed a conviction on the basis of *Hode* notwithstanding Bivins' guilty plea.

The government conceded error in *Bivins,* failing to argue the guilty plea distinction. It thus apparently failed to appreciate the then recent holding in *United States v. Faircloth,* 45 M.J. 172 (1996). In *Faircloth,* USCAAF overturned our reversal of a guilty plea to larceny of a joint instrument. *See United States v. Faircloth,* 43 M.J. 711 (A.F.Ct. Crim.App.1995). The holding of our superior Court clearly signaled USCAAF's reluctance to overturn an otherwise provident plea of guilty even where there are arguable legal defenses to the charge.[8] Appellant falls squarely within USCAAF's *Faircloth* holding. He had every opportunity, as did Hode, to challenge the regulation under which he was charged. Instead, under oath, he acknowledged that he knew about the regulation, knew that it prohibited his underage drinking, that he had a duty to obey that regulation, and that by drinking alcohol at age 19 in a state where the minimum drinking age was 21 he subjected himself to punitive action. We hold, therefore, that appellant's plea of guilty to the charge of violating AFR 215–7 was not improvident. Conse-

8. The Chief Judge's dissent in *Bivins* drew appropriate significance from the distinction offered by

Bivins' guilty plea, thus correctly applying the *Faircloth* result. *Bivins,* 45 M.J. at 503.

quently, we need not address whether AFR 215–7 was, in fact, a punitive regulation in contradistinction to its successor.

### *Conclusion*

Finding no merit to the new assignment of error, we adhere to our original disposition of this case. The findings are correct in law and fact, the sentence is correct in law and not inappropriately severe, and the same are hereby

AFFIRMED.

Senior Judge PEARSON and Judge J.H. MORGAN concur.