# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
RISCH, FEBBO, and WOLFE
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Sergeant MONTRELL L. MAYO**
**United States Army, Appellant**

ARMY 20140901

---------------
ORDER
---------------

WHEREAS:

On 7 April 2017, this Court issued a memorandum opinion affirming the findings and sentence in appellant's case. *United States v. Mayo*, ARMY 20140901, 2017 CCA LEXIS 239 (Army Ct. Crim. App. 2017) (mem. op.). On 26 April 2017, appellate defense counsel filed a motion for reconsideration and a motion to admit Defense Appellate Exhibit (DAE) C, an affidavit from appellant's trial defense counsel. On 5 May 2017, we granted the motion to admit DAE C for consideration on whether to grant the motion for reconsideration.

NOW, THEREFORE, IT IS ORDERED:

Appellant's motion for reconsideration is DENIED.

FEBBO, Judge, concurring in the denial of the motion to reconsider:

While not included in our initial opinion, we were fully aware of the issues that appellant now asks us to reconsider. I see no reason to reconsider our sentence assessment in this case.

Finding that appellant and the convening authority could have finalized a pretrial agreement limiting appellant's sentence to confinement to fifty-years requires a copious ration of speculation served alongside a heaping helping of inference. "A criminal defendant does not have an absolute right under the Constitution to have his guilty plea accepted by the court," and there is no right to a pretrial agreement. *North Carolina v. Alford*, 400 U.S. 25, 38 n.11 (1970). Appellant's request for a retroactive sentence assessment based on an agreement not signed would be applicable to all similar circumstances where pretrial negotiations fail to mature into a signed pretrial agreement. To provide relief in this case opens the door to other collateral challenges based on any sentence which is higher than what was proposed. We are poorly situated to determine the reasons that a pretrial

agreement was not signed.  Regardless of the less favorable outcome, appellant forfeited the benefit of any potential pretrial agreement in this case when he did not pursue acceptance of a pretrial agreement.

As Judge Wolfe agrees, the sentence adjudged by the court-martial in this case is correct in law and correct in fact.  UCMJ art. 66(c).  The only question, therefore, is whether the sentence "should be approved."  *Id*.

Sentence appropriateness involves the judicial function of assuring justice is done and that the accused gets the punishment he deserves.  *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988).  This requires "individualized consideration of the particular accused on the basis of the nature and seriousness of the offense and the character of the offender."  *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (quoting *United States v. Mamuly*, 10 U.S.C.M.A. 102, 106-107, 27 C.M.R. 176 180-81 (C.M.A. 1959))(internal quotations omitted).  In reviewing the sentence we must recognize the trial court saw and heard the witnesses and evidence.  *Id.; United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).  While this Court has discretion to determine the appropriateness of any sentence, we are not, however, a court of equity.  *United States v. Nerad*, 69 M.J. 138, 145 (C.A.A.F. 2010).

Appellant brutally murdered his girlfriend and fellow soldier—a fact we should not quickly overlook or soon forget.  In my view the sentence is correct in law, correct in fact, and should be approved.  Any additional sentence relief would be an act of clemency, which is beyond our authority.

WOLFE, Judge, dissenting:

I would reconsider our sentence assessment in this case.  Under the unusual facts of this case, there is some evidence that the military unique requirement for an inquiry pursuant to *United States v. Care*, 18 C.M.A. 535, 40 C.M.R. 247 (1969), [hereinafter *Care* inquiry] has caused appellant to serve a harsher sentence then he otherwise would.  Under stare decisis, it is not for this court to question or reconsider the fundamental assumptions of *Care*.  However, we should *consider* whether to provide sentence relief to appellant.

Contemporaneous pretrial records adequately demonstrate that appellant was guilty, wanted to plead guilty, and was offered a pretrial agreement for a term of years.  However, appellant was so overcome by grief and remorse from killing his fiancé that—upon being informed of the requirements of pleading guilty at court-martial—appellant rejected any pretrial agreement that would require him to go through his murderous acts in detail.  Such an unusual set of facts requires a bit more explanation.

By appellate happenstance, the record on appeal in this case is unusual. In appellant's initial filing with this Court he alleged that his trial attorney was ineffective in failing to properly advise him on the possibility of parole if he signed a pretrial agreement. After the government submitted affidavits and notes regarding his counsel's performance, appellant withdrew the assigned error. Thus when we initially decided the case, although there was no longer before us an allegation of ineffective assistance of counsel, we had numerous documents providing insight into the pretrial thinking of appellant and his counsel.

Affidavits and defense counsel notes submitted by the government on appeal provide a factual basis to support the following:[1]

- The counsel for government made an offer of a pretrial agreement that would have limited appellant's confinement to fifty years.

- Had appellant been sentenced to a term of fifty years appellant would have been eligible for parole after serving ten years of confinement. *See* Dep't of Defense Instruction 1325.07 (11 Mar. 2013).

- Appellant told his attorney he would plead guilty and would accept "whatever they were willing to give him." Appellant repeated this guidance to his attorney.

- Appellant, upon being informed of the requirements for a *Care* inquiry, told his counsel "[i]f they try to make me talk to them after I admit guilt, I just won't talk to them. No one can make me talk to them."

- Appellant refused to participate in a *Care* inquiry not because he was unwilling to disavow a defense or because he did not believe himself to be guilty, but rather because, in the words of his counsel, "he was debilitated by remorse for his actions." Appellant maintained this position repeatedly as his counsel prepared for trial, counseled appellant on the risks of trial, and sought advice from other defense counsel.

---

[1] I note that it was the *government* that provided this information to the court and appellant has not disputed these facts on appeal. I further note the affidavits are not the result of post-hoc reasoning and are instead amply supported by contemporaneous notes taken by counsel during trial preparations. In general, I would not make any factual findings as to the truth of these facts as they are not technically part of the record of trial and were not litigated at the trial level. *See generally United States v. Ginn*, 47 M.J. 236 (C.A.A.F. 1997). However, a *DuBay* hearing would appear unnecessary as there is no factual dispute. *See United States v. DuBay*, 17 U.S.C.MA. 147, 37 C.M.R. 411 (1967).

- Appellant then pleaded not guilty and was convicted of premeditated murder.

- Appellant was sentenced to be confined for life without the possibility of parole.

If these facts are true, appellant was guilty and wanted to plead guilty, but was unable to plead guilty because of the requirements of *Care*. If so he was unable to get the benefit of either a pretrial agreement or the sentence reduction that comes with pleading guilty and taking responsibility for one's actions. Stated differently, appellant was arguably—but tangibly—hurt by the requirement for a *Care* inquiry. As a matter of logic, there has always been the theoretical class of accuseds who have been disadvantaged because of the requirement for a *Care* inquiry (that is, the class of accuseds who would have received the benefit of a lesser sentence that accompanies taking responsibility for one's actions had the military justice system had less stringent rules on pleading guilty). What is unique about this case is that there is a somewhat developed record on this issue and that the possible harm to appellant may be measurable.

Our superior court's decision in *Care* rested on two foundations. The first was the court's developing interpretation of Article 45(a), UCMJ. The second was three recent (at the time) Supreme Court decisions affecting guilty pleas in federal court. Both merit a brief comment.

Article 45(a), UCMJ, provides if an accused sets up a matter inconsistent with a plea of guilty or if it appears that the plea of guilty was entered into "improvidently," the case shall proceed as though the accused had pleaded not guilty. In *United States v. Chancelor*, 16 U.S.C.M.A. 297, 36 C.M.R. 453 (1966), which the court in *Care* adopts by reference, the court provided a detailed legislative history of the purpose behind Article 45(a), UCMJ.

In *Care,* the court noted three decisions by the Supreme Court in 1969 "[bore] importantly" on the court's decision. *United States v. Care*, 18 C.M.A. 535, 40 C.M.R. 247 (1969) (citing *McCarthy v. United States*, 394 US 459 (1969), *Halliday v. United States*, 394 U.S. 831 (1969), and *Boykin v. Alabama*, 395 U.S. 238 (1969)). In *McCarthy,* the Court held that a plea of guilty had to be set aside unless the court personally inquires whether the defendant understood the nature of the charge. The Court's decision in *McCarthy*, which addressed a non-military case, involved interpreting Federal Rule of Criminal Procedure 11 [hereinafter Fed. R. Crim. Proc.].

*In* 1969, the C.A.A.F's decision in *Care* was well-aligned with the Supreme Court's decision in *MacCarthy*. However, as any practitioner knows, since 1969 the federal courts and military courts have gone in different directions in interpreting what is required to establish a factual and legal basis for a guilty plea. As the

Supreme Court arguably walked backed *McCarthy*, in subsequent years military case law has remained steadfast. *Compare Henderson v. Morgan*, 426 U.S. 637, 646 (1976) (allowing the factual basis of a guilty plea to be satisfied by a "factual statement," "stipulation" or "representation" by counsel) *with United States v. Jordan*, 57 M.J. 236 (C.A.A.F. 2002).

Military justice practice also did not change when parts of *McCarthy* were "overruled" by changes to Fed. R. Crim. Proc. 11 in 1983. *See United States v. Tunning*, 69 F.3d 107, 111 (6th Cir. 1995) ("The new [Fed. R. Crim. Pro.] 11 "was meant to overrule *McCarthy* . . . .").

Nor did military justice practice change in 1984 when the President promulgated the Rules for Courts-Martial. In many instances, to include R.C.M. 910 which governs guilty pleas, the President's implementation of the rule followed the "mandate" of Article 36, UCMJ to "as far as he considers practicable, apply the principles of law and the rules of evidence generally recognized in the trial of criminal cases in the United States district courts . . . ." *United States v. Dowty*, 60 M.J. 163 (C.A.A.F. 2004) (describing Article 36 as a "mandate"). *United States v. Ankeny*, 30 M.J. 10 (C.A.A.F. 1990) (describing Article 36, UCMJ, as a "legislative[] mandate"); *United States v. Loving*, 41 M.J. 213 (C.A.A.F. 1994). As the drafter's analysis makes clear, R.C.M. 910(c)-(e) was copied from Fed. R. Crim. Pro. 11 with one or two substantive exceptions. R.C.M. 910 analysis at A21-59 (making clear that R.C.M. 910 is based on Mil. R. Evid. R. 11, but is "consistent" with the 1969 *Manual for Courts-Martial* [hereinafter *MCM*]).

Here is the relevant provision from the 1969 *MCM*:

> (3) A plea of guilty will not be accepted unless the military judge . . . after the accused has been questioned, is satisfied not only that the accused understands the meaning and effect of his plea and admits the allegations to which he has pleaded guilty but also that he is voluntarily pleading guilty because he is in fact convinced that he is in fact guilty.

*MCM* (1969 ed.) ¶70b.

The current version of this rule is contained in R.C.M. 910(e) as follows:

> (e) *Determining the accuracy of the plea.* The military judge shall not accept a plea of guilty without making such inquiry of the accused as shall satisfy the military judge that there is a factual basis for the plea. The accused shall be questioned under oath about the offenses.

The noticeable change between the two is the degree to which a factual admission must be extracted from the accused, and the removal in 1984 of the requirement that the accused be personally convinced of his own guilt. R.C.M. 910(e) requires the accused to provide "a factual basis" while the 1969 *MCM* required the accused to admit to each allegation and that the accused personally is "convinced that he [or she] is in fact guilty." As far as I can ascertain, the 1984 promulgation of R.C.M. 910 has had little effect on the procedures for guilty pleas in military courts. For example, the typical Benchbook colloquy between an accused and the military judge begins with a nearly verbatim recitation of the provisions of the 1969 *MCM* completely untouched by that same paragraph's revocation in 1984. Dep't of the Army, Pam. 27-9, Legal Services: Military Judges' Benchbook [hereinafter Benchbook], para. 2-2-3 and 2-2-8 (10 Sept. 2014).

This inertia may be because although R.C.M. 910 was different, and substantially copied Fed. R. Crim. Pro. 11 in most regards, it did not directly contradict the provisions in the 1969 Manual or *Care*. *See* R.C.M. 910 analysis at A21-59. That is, while the new rule could have triggered a rethinking of *Care*—it did not require one. In a series of cases, and over Judge Crawford's repeated dissents, our superior court reinforced the central holding of *Care* without revisiting the underlying foundations of the opinion. *See e.g. United States v. Redlinski*, 58 M.J. 117 (C.A.A.F. 2003); *United States v. Jordan*, 57 M.J. 236 (C.A.A.F. 2002).

Just recently, but likely too late to help appellant, Congress made the first substantive amendments to Article 45, UCMJ, since the initial passage of the UCMJ. The Article now states that a "variance from the requirements of this article is harmless error if the variance does not materially prejudice the substantial rights of the accused." National Defense Authorization Act for Fiscal Year 2017 [hereinafter FY17 NDAA], Pub. L. 114-328, § 5227 (2016) (Pleas of the accused). This mirrors the change made to Fed. R. Crim. Pro. 11(h) in 1983 which the 6th Circuit in *Tunning* described as "overruling" the Supreme Court's interpretation of that rule in *McCarthy*. 69 F.3d at 111.

The effect of the amendment to Article 45, UCMJ, will of course play itself out over time. Any effect in the amendment is likely to move military practice more in line with that of federal district courts. What happens, for example, if an accused attempts to plead guilty by agreeing on the record that a stipulation of fact establishing the factual basis for the plea of guilty is accurate? Is that error? If that is error, is it harmless, invited or waived? Such a procedure may even comply with a narrow reading of R.C.M. 910 and Article 45, UCMJ, (at least as amended). *But*, it would not comply with law that governs the outcome of this case.

My concern in this case is not only that appellant could have possibly benefited had the amendments to Article 45 been effective earlier. But it is also this is *not* a case where appellant's resistance to conducting a *Care* inquiry stems from

the unwillingness to admit guilt or to his refusal to disavow a defense. *See e.g.* *United States v. Figura*, 44 M.J. 308 (C.A.A.F. 1996) (rejecting "*Alford*" pleas in the military when the accused is unwilling to admit guilt); *but see United States v. Luebs*, 20 U.S.C.M.A. 475, 43 C.M.A. 315 (1971) (citing *North Carolina v. Alford*, 400 U.S. 25 (1970) and allowing an accused to plead guilty when the accused admits guilt but professes a lack of memory in committing the offense). Here, by contrast, the evidence on appeal and submitted by the government is appellant's refusal to submit to a *Care* inquiry was based solely on his overwhelming sense of guilt and remorse.

Additionally, the difference between military and federal districts courts in accepting guilty pleas, despite the "mandate" of Article 36 as well as the subtle changes caused by the promulgation of R.C.M. 910, gives me pause and leads to this lengthy discussion. I have found no more thoughtful analysis of my concerns than Judge Cox's concurring opinion in two cases: both named *Johnson*. *United States v. Johnson*, 21 M.J. 211 (C.M.A. 1986), *United States v. Johnson*, 42 M.J. 443 (C.A.A.F. 1995). While addressing different issues, in both cases Judge Cox addressed the degree to which appellate paternalism is appropriate within the context of the military justice system. Judge Cox admits "there is a price to be extracted for our paternalism." *Id.* at 447. Perhaps that will be the result here.

For certain, the legal landscape has changed substantially since *Care* was first decided. The trial judiciary, independent from the chain of command, did not yet exist when our superior court decided *Care* in 1968. The Military Rules of Evidence were not promulgated until 1980. The Rules for Courts-Martial came four years later in 1984. Perhaps the two most important developments, however, took place outside of the *MCM*. The first, was the development of case law that rooted out unlawful command influence (UCI) by requiring the government to disprove beyond a reasonable doubt that UCI existed or affected the case. *See United States v. Biagase*, 50 M.J. 143 (C.A.A.F. 1999). The second, was the establishment of an independent defense service staffed with qualified counsel under Article 27, UCMJ. Most, if not all, of the potential harms that *Care* attempts to prevent can be addressed in the first instance by competent independent defense counsel.[2]

---

[2] Although unheard of, the UCMJ still permits trial by special court-martial without a military judge and permits non-certified counsel to represent an accused at special courts-martial. *See* Article 26(a); Article 27(c). However, even these technical exceptions will be gone after the effective date of the FY17 NDAA. National Defense Authorization Act for Fiscal Year 2017, Pub. L. 114-328, §§ 5184, 5186 (2016)(Detailing, qualifications, and other matters relating to military judges) (Qualifications of trial counsel and defense counsel).

Care does, on the other hand, serve important interests. A proper Care inquiry provides a public accounting of an accused's guilt that may give additional public confidence in the outcome that would be absent in a more abbreviated proceeding.

A proper Care inquiry also removes all doubt that an accused's plea is voluntary, knowing, and not the result of coercion. If all defense attorneys were competent, Care's mandates would be mostly redundant with the advice of an accused's attorney. In this regard, Care functions to avoid the stricter requirements of Strickland v. Washington, 466 U.S. 668 (1984), when evaluating a counsel's competency in the guilty plea context. As a result, military appellate courts rarely address whether a defense counsel was competent in providing advice to an accused who pleaded guilty.[3]

To be absolutely clear, I agree this court cannot find appellant is entitled to relief as a matter of law. Any change in the requirements for Care cannot originate in this lower-intermediate appellate court. If appellant believes Care should be revisited, he needs to petition our superior court and demonstrate "good cause" for relief. See Article 67, UCMJ. However, it is worth noting that few cases are more interwoven into the fabric of military justice than Care. The central holding of Care has been reaffirmed over and over again by our superior court—and without much hesitation. There are literally volumes of cases affirming and applying Care.

The question we face, therefore, is not whether Care should be revisited or whether we must grant appellant relief. The former question is a question beyond our authority and the latter question is clearly answered in the negative. Rather, the question is whether this Court "should" provide sentencing relief under our unique powers under Article 66(c), UCMJ. Appellant acknowledges our limited authority here, and it is this question appellant asks us to reconsider.

Here, we face a difficult question. If the accused's sentence was higher than it would have been absent the requirements of Care, we could use our highly discretionary authority to reduce the sentence. On the other hand, providing an appellant with the benefit of a "pretrial agreement" that was never in fact signed certainly presents its own problems. Continuing with the textile metaphor, there is a danger that if one could pull the thread of Care in this one case (by giving appellant sentencing relief based on a pretrial agreement he didn't sign) we risk unraveling the fabric of Care in other cases.

---

[3] Of course, counsel who cannot competently advise an accused on pleading guilty will face bigger hurdles when the plea is rejected and that same counsel represents the accused in a contested trial.

Simply put, few accuseds *want* to go through a *Care* inquiry. For an inquiry that was designed to protect an accused, *at the time of trial* the *Care* inquiry presents risk. First, anything the accused says during a *Care* inquiry can be used against the accused in determining the sentence. It therefore is often in an accused's interest to say as little as possible about the offense as the military judge will allow.[4] Say too much and the sentence may reflect the additional (but unnecessary) information. Second, once an accused has decided to plead guilty, the *Care* inquiry presents the risk the military judge will reject the accused's plea and any associated protections provided by a pretrial agreement. An accused who has already tactically weighed the risks and elected to plead guilty will often see the rejection of a guilty plea (at trial if not on appeal) as an outcome best avoided.

Accordingly, there is the possibility that if we provided sentencing relief to appellant in this case we may find ourselves having created a *Care* loophole that future accuseds may be all too happy to jump through as well. Many an accused would prefer to have *both* the possibility of an acquittal a contested trial presents *and* the effective benefit of a pretrial agreement.

Whether we should grant sentencing relief to appellant is a substantial question. Thus, I do not presume to know at this time how I would answer the question. It may be in the end that granting appellant's motion to reconsider would leave us exactly where we started. However, I do think we should answer this question, and therefore I would grant the motion to reconsider.

I conclude this dissent with the cautionary words of Justice White, writing for the Supreme Court: "The prohibitions against involuntary or unintelligent pleas should not be relaxed, but neither should an exercise in arid logic render those constitutional guarantees counterproductive and put in jeopardy the very human values they were meant to preserve." *Alford*, 400 U.S. at 39.

---

[4] This dilemma was presented in a case recently decided by the CAAF. Appellant had alleged that the military judge abused his discretion in extracting *too much* information out of the accused. *United States v. Price*, 76 M.J. 136 (C.A.A.F. 2017).

Likewise, in *United States v. Wiggleton*, ARMY 20140638, 2016 CCA LEXIS 567 (Army Ct. Crim. App. 2016) (mem. op.), we discussed some of the simultaneous forces that pull an accused in opposite directions during a *Care* inquiry. In that case, the appellant wanted the military judge to accept his guilty plea, but explained his guilt in an incredulous manner so that it did not directly contradict his pretrial sworn statements. The result was a legally valid guilty plea based on nearly impossible facts.

MAYO—ARMY 20140901

DATE: 16 June 2017



FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

CF:    JALS-DA
        JALS-GA
        JALS-CCR
        JALS-CCZ
        JALS-CR3

10