UNITED STATES, Appellee,

v.

**Staff Sergeant Jeffrey D. WALKER,
United States Army, Appellant.**

**ARMY 9801091.**

U.S. Army Court of Criminal Appeals.

27 Nov. 2000.

For Appellant: Colonel John T. Phelps II, JA; Colonel Adele H. Odegard, JA; Major Kirsten V.C. Brunson, JA; Lieutenant Colonel Robert L. Gallaway, JA, USAR; Captain Joshua E. Braunstein, JA (on brief).

For Appellee: Colonel Russell S. Estey, JA; Major Patricia A. Ham, JA; Captain Paul T. Cygnarowicz, JA (on brief).

Before CAIRNS, Senior Judge, BROWN, and VOWELL, Appellate Military Judges.

## OPINION OF THE COURT

BROWN, Judge:

At a fully contested trial, a general court-martial composed of officer and enlisted members convicted the appellant of committing indecent acts upon a child [1] (two specifications), in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934

---

1. The finding of guilty of one specification was to a lesser-included offense of the charged offense, attempted carnal knowledge (Article 80, UCMJ, 10 U.S.C. § 880).

[hereinafter UCMJ]. The panel sentenced the appellant to a bad-conduct discharge, reduction to Private E1, and confinement for four years. In otherwise approving the adjudged sentence, the convening authority waived statutory forfeitures for a period of six months and directed that such monies be paid to the appellant's wife and children. *See* UCMJ art. 58b(b), 10 U.S.C. § 858b(b).

This case is before the court for review pursuant to Article 66, UCMJ, 10 U.S.C. § 866. We have examined the record of trial and considered the briefs submitted by the parties, as well as the matters personally raised by the appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). In his second assignment of error, the appellant argues that the military judge committed error by admitting, over defense objection, the hearsay statements of the appellant's wife.[2] While we agree that the military judge erred, we find this error to be harmless. We find no merit in the appellant's first assignment of error or in his *Grostefon* matters.

## BACKGROUND

The members convicted the appellant of offenses that occurred in Illesheim, Germany, just prior to the appellant's reassignment to the United States. The night of 15 August 1997, the appellant's stepdaughter, Tamara, had an eleven-year-old friend, T.R., spend the night at the appellant's quarters. That evening, the appellant, Tamara, and T.R. sat on a mat and watched videotapes of several "scary" movies. At the time, the appellant's two younger daughters were asleep in the same room. The room itself was sparsely furnished because most of the appellant's household goods had already been packed for his pending move. The appellant's wife was away on a shopping trip in Poland.

T.R. testified that the appellant drank some beer as the three viewed the movies. As the evening progressed, Tamara fell asleep. The appellant woke Tamara and told her to get into a bed behind the mat; she

complied and again fell asleep. With only the appellant and T.R. remaining on the mat, the appellant asked T.R. to rub his shoulders, which she did. T.R. then testified that the appellant told her that she "wasn't doing it right." They switched roles. The appellant began massaging T.R. and took off her shirt and bra. T.R. testified that the appellant then touched her breasts, removed her shorts and underwear, and touched her "butt" and vaginal area. The appellant also kissed T.R. on her stomach and face.

T.R. testified that, at some point, the appellant took off his own shorts and started touching himself. As T.R. laid on her back, the appellant knelt in front of her and spread her knees with his hands. She felt his erect penis touch her inner thigh. T.R. stated that she told the appellant to stop four or five times, but he did not respond. The appellant stopped only after Tamara awoke and called his name. He rolled over, put on his shorts, and went to talk to Tamara.

T.R. also testified that the appellant twice told her not to tell anyone what had happened—once that evening and once about a week later. In fact, T.R. did not report the offenses until approximately two months later when her mother, based on other information, approached her about what occurred during the sleepover.

During the prosecution's case, the government presented an expert in child sexual abuse cases who opined, *inter alia*, that delayed reporting of sexual abuse by child victims is common and that T.R. exhibited characteristics consistent with those of a child sexual abuse victim. Criminal Investigation Command (CID) Special Agent (SA) Reasoner also testified for the government. He testified that he interviewed the appellant's wife, Mrs. Walker, about the incident between T.R. and the appellant. He further testified that Mrs. Walker told him that "she returned from a trip from Poland to her residence in Germany, and she had been told of an incident that occurred, but that she did not wish to elaborate on the incident." The

---

2. Appellate defense counsel styled the assignment of error as follows:
 THE MILITARY JUDGE COMMITTED REVERSIBLE ERROR BY ADMITTING, OVER DEFENSE OBJECTION, THE HEARSAY STATEMENTS OF TERESA WALKER AS AN ADMISSION OF A PARTY.

government then offered, and the military judge admitted over the appellant's objections, the typewritten, redacted sworn statement of Mrs. Walker taken by SA Reasoner. Special Agent Reasoner thereafter read Mrs. Walker's sworn statement, as redacted, to the panel members. The sworn statement, as redacted, stated: "Around 17 Aug 97, I returned to Illeshiem [sic], [Germany], from Poland. [The appellant] did tell me what happened; however, I do not wish to disclose what he said."

During the defense's case, the appellant testified that nothing sexual or indecent transpired with T.R. He indicated that he fell asleep on the mat. When Tamara awakened him, he discovered that his arm was draped around T.R.'s shoulders and that both were fully clothed. He suggested that he must have rolled over in his sleep. Tamara also testified for the defense. Although she generally supported the appellant's testimony, she contradicted him on several key points. During cross-examination, Tamara conceded that, on the night in question, she thought something bad or inappropriate had occurred.

## EVIDENTIARY LITIGATION

The parties litigated the admissibility of Mrs. Walker's statement to CID, in a somewhat piecemeal fashion, at several points during the court-martial. Prior to trial, the government indicated their intent to call Mrs. Walker as a witness for the government. In response, the defense presented a stipulation of expected testimony of Mrs. Walker, which indicated that if she were called to testify, she would invoke her spousal privilege and would refuse to testify against her husband. Although the stipulation cited no authority, the defense presumably relied on Mrs. Walker's spousal incapacity privilege pursuant to Military Rule of Evidence [hereinafter Mil.R.Evid.] 504(a).

The government thereafter indicated their intent to have SA Reasoner testify as to what Mrs. Walker told him and to move the admission of Mrs. Walker's sworn statement into

evidence. The government argued that the statement, "[The appellant] did tell me what happened; however, I do not wish to disclose what he said," constituted an admission by the appellant (see Mil.R.Evid. 801(d)(2)), and was not hearsay. The government reasoned that said statement evidenced the appellant's "consciousness of guilt," i.e., because Mrs. Walker refused to disclose to SA Reasoner the substance of what the appellant told her, the appellant must have revealed incriminating information to her. Alternatively, the government argued that the statement, if hearsay, was admissible under the residual hearsay exception and as a statement against interest, pursuant to Mil.R.Evid. 804(b)(5)[3] and Mil.R.Evid. 804(b)(3), respectively.

The defense filed a motion in limine to preclude the government's use of Mrs. Walker's statement to CID. The defense argued that the hearsay rules precluded the admission of Mrs. Walker's statement and that the statement was not an admission by the appellant. The defense asserted that the statement constituted a "confidential communication" and was privileged pursuant to Mil. R.Evid. 504(b). The defense further argued that the statement was innocuous because it did not reveal the substance of what the appellant told his wife. To the extent that the statement inferred that the appellant confessed to his wife, the defense argued that the statement was highly prejudicial.

The military judge ultimately ruled that Mrs. Walker's statement to SA Reasoner was admissible as an admission by a party opponent pursuant to Mil.R.Evid. 801(d)(2). At trial, SA Reasoner testified as to his recollection of what Mrs. Walker told him the day he interviewed her. Thereafter, the military judge, pursuant to a government motion, admitted Mrs. Walker's redacted sworn statement into evidence over defense objection. Special Agent Reasoner then read Mrs. Walker's redacted sworn statement to the panel members.

## DISCUSSION

 We review the ruling of a military judge "on admissibility of evidence for 'clear

---

3. Effective 1 June 1999, Mil.R.Evid. 804(b)(5) was consolidated with Mil.R.Evid. 803(24). The resulting new rule is Mil.R.Evid. 807.

abuse of discretion.'" *United States v. Schlamer*, 52 M.J. 80, 84 (1999) (quoting *United States v. Johnson*, 46 M.J. 8, 10 (1997)), *cert. denied*, —— U.S. ——, 120 S.Ct. 1270, 146 L.Ed.2d 219 (2000). To reverse a military judge's decision to admit evidence, we must find that the decision was "arbitrary, fanciful, clearly unreasonable," or "clearly erroneous." *See United States v. McElhaney*, 54 M.J. 120, 132 (2000) (citations omitted); *United States v. Johnson*, 49 M.J. 467, 473 (1998) (citations omitted); *United States v. Travers*, 25 M.J. 61, 62 (C.M.A. 1987) (citations omitted).

As a preliminary matter, we hold that, given the trial defense counsel's specific objections and the overall context of the evidentiary litigation, the trial defense counsel preserved the issue for our consideration. *See* Mil.R.Evid. 103(a). Based on the record before us, we agree—albeit for reasons somewhat different than those argued by the appellant—that the military judge erred in admitting into evidence Mrs. Walker's sworn statement to CID and in permitting SA Reasoner to testify regarding what Mrs. Walker told him.

In determining the admissibility of the statement, we find it necessary to parse Mrs. Walker's redacted statement. The first phrase of significance is: "[The appellant] did tell me what happened." The second phrase is: "I do not wish to disclose what he said." We agree with the appellant's basic argument that the first phrase by itself is innocuous, and thus irrelevant. The phrase does not have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Mil.R.Evid. 401. Thus, the first phrase lacks evidentiary value altogether.

The second phrase, in essence, constitutes Mrs. Walker's invocation of her privilege not to reveal confidential spousal communications, pursuant to Mil.R.Evid. 504(b). Military Rule of Evidence 504(b)(1) states that a

person "has a privilege during and after the marital relationship to refuse to disclose ... any confidential communication made to the spouse of the person while they were husband and wife and not separated as provided by law." The government desired to admit *both phrases together* because Mrs. Walker's decision not to reveal to SA Reasoner what the appellant told her created an inference useful to the government and adverse to the defense. The government wanted to imply that the appellant disclosed incriminating information to Mrs. Walker.

Military Rule of Evidence 512(a)(2) states that a "claim of a privilege by a person other than the accused whether in the present proceeding or upon a prior occasion normally is not a proper subject of comment by the military judge or counsel for any party." Likewise, "[a]n adverse inference may not be drawn therefrom except when determined by the military judge to be required by the interests of justice." *Id.* The military judge did not make a determination [4] as to whether the interests of justice required the drawing of an adverse inference from Mrs. Walker's claim of privilege, and we find that the interests of justice did not require the drawing of such an adverse inference. Based upon our review of the record, we cannot discern any permissible, relevant use of the statement by Mrs. Walker to SA Reasoner. *See* Mil. R.Evid. 401 and 402.

■ We hold that the redacted statement, in whole or in part, was not an admission by the appellant. We also hold that the military judge abused her discretion by permitting the government to attempt to draw an adverse inference from Mrs. Walker's invocation of her spousal privilege. We further hold that the military judge abused her discretion by permitting SA Reasoner to testify regarding what Mrs. Walker told him during their interview and by admitting into evidence Mrs. Walker's redacted sworn statement.

■ Although the military judge abused her discretion, we hold such error to be

4. In fairness to the military judge, none of the parties at trial focused on or even mentioned Mil.R.Evid. 512. On several occasions, the trial defense counsel attempted to prevent comment upon Mrs. Walker's assertion of her privilege. The defense's argument relied more on an equitable standard rather than on any rule of evidence.

harmless. Absent SA Reasoner's testimony and the sworn statement by Mrs. Walker, the remainder of the government's case against the appellant was very strong. We find that although T.R. initially was reluctant to report the crimes, she was an extremely credible witness, whose testimony was compelling and consistent. Furthermore, the government's expert witness bolstered T.R.'s testimony. In contrast, the appellant's effort to provide an innocent explanation for what transpired—through his own testimony and through Tamara's testimony—was extremely weak and unconvincing. The improperly admitted evidence was ambiguous at best, and the trial defense counsel did an excellent job of stressing the innocuous nature of Mrs. Walker's statement during the cross-examination of SA Reasoner and during closing argument.[5] Under the circumstances of this case, the erroneous admission of SA Reasoner's testimony and Mrs. Walker's redacted statement to CID had no substantial influence on the findings. *See United States v. Pablo*, 53 M.J. 356, 359 (2000). As such, the error did not materially prejudice the appellant's substantial rights. *See* UCMJ art. 59(a), 10 U.S.C. § 859(a).

Accordingly, the findings of guilty and the sentence are affirmed.

Senior Judge CAIRNS and Judge VOWELL concur.

---

5. After the government's closing argument, in which the trial counsel did not comment on Mrs. Walker's sworn statement to CID, the trial defense counsel commented on the innocuous nature of the redacted statement in his closing argument. Thereafter, the trial counsel commented on the statement in rebuttal. At this point, and at other points in the trial, the appellant *could have requested* an instruction from the military judge pursuant to Mil.R.Evid. 512(c). We are left to speculate whether this failure to request a curative instruction was a tactical decision by the defense or was an oversight. In either case, the military judge did not commit error—let alone plain or obvious error—in failing, sua sponte, to give a curative instruction, and the lack of a curative instruction did not materially prejudice the appellant's substantial rights. *See United States v. Powell*, 49 M.J. 460, 463–64 (1998).