IN THE CASE OF

UNITED STATES, Appellee

V.

Jeffrey D. WALKER, Staff Sergeant
U.S. Army, Appellant

No. 01-0762

Crim. App. No. 9801091

United States Court of Appeals for the Armed Forces

Argued March 20, 2002

Decided August 23, 2002

GIERKE, J., delivered the opinion of the Court, in which
EFFRON and BAKER, JJ., joined.  SULLIVAN, S.J., filed a
dissenting opinion, in which CRAWFORD, C.J., joined.

Counsel

For Appellant:  Captain Fansu Ku (argued); Colonel Adele H.
    Odegard, Lieutenant Colonel E. Allen Chandler, Jr., Major
    Mary M. McCord, and Captain Runo C. Richardson (on brief);
    Captain Linda A. Chapman.

For Appellee:  Captain Charles C. Choi (argued); Colonel Steven
    T. Salata and Major Paul T. Cygnarowicz (on brief).

Military Judges:  Paul L. Johnston and Donna L. Wilkins


  **This opinion is subject to editorial correction before final publication.**

Judge GIERKE delivered the opinion of the Court.

A general court-martial composed of officer and enlisted members convicted appellant, contrary to his pleas, of two specifications of committing indecent acts with a child, in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 USC § 934. The adjudged and approved sentence provides for a bad-conduct discharge, confinement for four years, and reduction to the lowest enlisted grade. The convening authority waived, for a period not to exceed six months, the automatic forfeitures resulting from the sentence under Article 58b, UCMJ, 10 USC § 858b. The Court of Criminal Appeals affirmed the findings and sentence. 54 MJ 568 (2000).

This Court granted review of the following issue:

> WHETHER THE ARMY COURT OF CRIMINAL APPEALS ERRED WHEN IT HELD THAT THE ADMISSION OF THE STATEMENT OF APPELLANT'S WIFE WAS HARMLESS ERROR.

For the reasons set out below, we reverse.

## Background

The incident giving rise to the charges against appellant occurred in Illesheim, Germany, shortly before appellant's reassignment to the United States. The 11-year-old alleged victim, TR, was a friend of appellant's stepdaughter, Tamara.

The statement at issue was made by appellant's wife, Mrs. Theresa Walker, in response to questioning by Special Agent (SA) Reasoner, an investigator from the U.S. Army Criminal Investigation Command (CID). In the statement, Mrs. Walker told SA Reasoner that appellant told her what happened, but that she did not wish to disclose it.

2

Before trial, the Government indicated its intent to call Mrs. Walker as a prosecution witness. At an evidentiary hearing, the defense presented a stipulation of expected testimony, establishing that Mrs. Walker would invoke her spousal privilege and would refuse to testify against her husband. The Government argued that Mrs. Walker's statement to SA Reasoner was an admission by appellant under Mil.R.Evid. 801(d)(2), Manual for Courts-Martial, United States (2000 ed.).[1] Alternatively, the Government argued that the statement was admissible as residual hearsay under Mil.R.Evid. 804(b)(5).[2] The defense argued that the statement was privileged under Mil.R.Evid. 504. Over defense objection, the military judge admitted the statement as an admission under Mil.R.Evid. 801(d)(2).

## The Trial on the Merits

On August 15, 1997, TR was invited to spend the night at appellant's quarters. TR testified that appellant extended the invitation. Appellant's wife was away on a shopping trip in Poland.

The quarters were sparsely furnished because most of the family's household goods had been packed for shipment to the United States. The only furniture was a bed, two mattresses on the floor, and a television set.

---

[1] All Manual provisions cited are identical to the ones in effect at the time of appellant's court-martial unless otherwise indicated.

[2] The residual hearsay rules formerly in Mil.R.Evid. 803(24) and 804(b)(5) are now merged in Mil.R.Evid. 807 as a result of the passage of 18 months from the date the Federal Rules of Evidence were similarly amended. See Mil.R.Evid. 1102.

TR testified that, during the evening, appellant, Tamara, and TR sat on a mattress and watched videotapes of "scary" movies. Appellant's two younger daughters were asleep on the other mattress in the same room. The only light in the room was from the television set. TR testified that appellant drank about two cans of beer while they watched the movies. As the evening progressed, Tamara fell asleep on the mattress. TR testified that appellant told Tamara to get in the bed. Tamara moved to the bed and again fell asleep.

TR testified that appellant asked her to massage his shoulders, and she complied. After she rubbed appellant's shoulders for "5 minutes or less," appellant told her that she "wasn't doing it right," and they switched roles. TR testified that appellant removed her shirt and bra, touched her breasts, kissed her on her stomach and face, removed her shorts and underwear, removed his shorts, began "touching" himself, and positioned himself between her legs. She told appellant to stop four or five times, but he did not respond until Tamara awakened and called out "Dad" in a soft, sleepy voice. Appellant then rolled over, put on his shorts, and went into the back room to talk to Tamara.

TR testified she put her clothes back on and went to sleep on one mattress and that appellant and Tamara spent the night on the bed. The next morning, TR, Tamara, appellant, and the two younger children went swimming. TR went to her nearby home to get her swimsuit and money, and then she returned to appellant's quarters. After they returned from swimming, TR went home.

TR testified that appellant twice told her not to tell anyone what happened, once that evening and again about a week later. TR did not report the incident until approximately two months later, when her mother asked her what happened during the sleepover. She explained that she did not report the incident because she was embarrassed, she "didn't want them to be mad at [her]," and she "didn't want them to think that it was [her] fault and stuff." On cross-examination by defense counsel, TR admitted that she did not mention the massage to the social worker or CID because she thought they would think it was her fault if she mentioned it.

A clinical social worker testified as an expert witness for the prosecution, explaining that victims of child sexual abuse tend to be embarrassed and afraid of being blamed. As a result, they tend to delay reporting and to withhold details until they are comfortable giving more information. The social worker opined that TR's "presentation is very consistent with child sexual abuse," and that TR "is compliant and somewhat passive."

SA Reasoner testified about the statement at issue in this case. When he interviewed appellant's wife, she told him that when she returned from her shopping trip on August 17, two days after the alleged incident, "she had been told of an incident that occurred." In a sworn, written statement, she said that appellant "did tell [her] what happened," but she did not "wish to disclose what he said." SA Reasoner's testimony and the written statement were admitted over defense objection.

The defense theory was that nothing indecent or sexual happened, but "an innocent act . . . was blown out of proportion

by some well meaning, well intentioned, but overzealous individuals and agencies." The defense asserted TR had been influenced by her mother, social workers, and CID to embellish an innocent incident. During a lengthy cross-examination, defense counsel elicited testimony from TR that she underwent persistent questioning, was interviewed "for a real long time," and was asked questions "over and over again."

During the defense case-in-chief, appellant testified that he, Tamara, and TR were sitting on the same mattress, and that he fell asleep while watching a movie. He did not directly dispute the testimony that he told Tamara to get into the bed, stating only that he did not know how Tamara got from the mattress to the bed. He was awakened by Tamara calling out "Dad." He testified that he was startled when he discovered that he was lying beside TR with his arm around her. He testified that both he and TR were fully clothed. He denied giving TR a massage or touching her sexually.

Tamara testified for the defense. Contrary to TR's testimony, she testified that she, not appellant, invited TR to spend the night. She testified that when she fell asleep on the mattress, appellant told her to get in the bed. She complied and promptly fell asleep again. When she awakened and saw her stepfather's arm around TR, she yelled, "Dad, get up," and she asked, "What are you doing?" Appellant replied, "Nothing." According to Tamara, appellant "wasn't shocked, he was like sleepy." He then rolled off the mattress and went back to sleep. This testimony contradicted TR, who indicated that appellant was

wide awake, and who testified that Tamara said only, "Dad," and spoke in a soft, sleepy voice.

Tamara also testified that when she awakened, appellant was wearing a red shirt and red shorts, and TR was wearing cutoff blue jeans and a white shirt. This testimony contradicted TR's testimony that appellant removed her shirt and shorts and took off his own shorts.

Tamara testified that she was "sort of" worried that "something bad had happened," and that she was worried appellant had "touched her." She testified that she told her mother what she saw, and her mother replied, "[T]hat's what your dad had said."

The defense also presented evidence of good military character. Colonel Tyrone Graham testified that appellant was an "outstanding soldier." He ranked appellant among the top three noncommissioned officers with whom he had worked. He testified that he respected appellant's integrity, explaining that appellant addressed "some very -- very contentious issues in supply accountability" and handled them "in an honest and forthright manner."

In a stipulation of expected testimony, Lieutenant Colonel (LTC) John Polson testified that appellant worked for him for four years, and that he would rate appellant "in the top 1% of supply sergeants." In another stipulation of expected testimony, LTC Nathan Keith testified that appellant "is the best supply sergeant I have seen in the United States Army."

During argument on findings, the defense argued that TR was embarrassed because appellant had his arm around her, but that

the incident was "blown out of proportion" when TR's parents, the Military Police, CID, and other investigators kept asking her what happened. The defense argued that as TR was repeatedly questioned, "[t]he story is getting bigger and bigger." The defense portrayed TR as "a passive, eager to please, child," who "has been pulled into the system and is giving the answers she knows that they want."

Defense counsel then referred to Mrs. Walker's statement to SA Reasoner, which was not mentioned by trial counsel in her argument. Defense counsel argued:

> In this statement, Mrs. Walker had a conversation with her husband, but she did not divulge what was in that conversation. The statement is not a statement. The government admitted that statement to slander the Walker family. The government wants you to infer that there is a conspiracy contained in that statement. Give the statement what it is worth: zero.

During trial counsel's rebuttal argument, the following exchange took place:

> TC: Captain Swanson brought up the CID statement that --the statement that Theresa Walker made to the CID agent. She didn't want to disclose what her husband had told her. Why not if it was so innocent? Cynthia's friend--Cynthia being the victim's mother -- had a conversation with one of her -- one of Cynthia's friends, and -- which led her to confront ----
>
> MJ: Captain Gillespie [defense counsel] ---
>
> DC: Is this going where I think it's going?
>
> MJ: I don't know, is that an objection I hear?
>
> DC: It is if it's going where I think it's going, Your Honor.
>
> MJ: I ---
>
> TC: Well, I don't know where Captain Swanson thinks it's going, but ---

8

> MJ: Well -- but ---
>
> TC: Well, I'll move away, and in the event that she thinks ---
>
> MJ: Well, yeah.

(Emphasis added.)

After this exchange in the presence of the members, there was no further mention of Mrs. Walker's statement, no ruling on the propriety of the trial counsel's argument, and no instructions to the members about the inference, if any, that they were permitted to draw from Mrs. Walker's refusal to divulge what appellant had told her.

The Court of Criminal Appeals held that the military judge abused her discretion by admitting SA Reasoner's testimony regarding Mrs. Walker's statements and by permitting the Government's attempt to draw an adverse inference from Mrs. Walker's invocation of her spousal privilege.  However, the court below held that the error was harmless because it "had no substantial influence on the findings."  54 MJ at 572.

## Discussion

The Government has not challenged the lower court's holding that the military judge abused her discretion, either by certification or in its brief and oral argument.  See United

9

States v. Grooters, 39 MJ 269 (CMA 1994).  Thus, the only issue we will address is whether the error was harmless.[3]

 We review de novo the question whether an error was harmless.  See United States v. Grijalva, 55 MJ 223, 228 (2001) (review of constitutional error); United States v. Pablo, 53 MJ 356, 359 (2000) (review of nonconstitutional error).  The test for constitutional error is whether the error was harmless beyond a reasonable doubt.  Chapman v. California, 386 U.S. 18, 24 (1967).  The test for nonconstitutional error is "whether the error itself had substantial influence" on the findings.  Kotteakos v. United States, 328 U.S. 750, 765 (1946).  "If so, or if one is left in grave doubt, the conviction cannot stand."  Id.

 The parties have briefed and argued the issue as a non-constitutional evidentiary error.  We need not decide whether the parties have correctly characterized the error as non-constitutional, because the Government has failed to carry its burden of showing harmlessness under either test.

 This case pitted the credibility of appellant against TR. Although Tamara contradicted appellant's version of the events in some respects and corroborated TR's version in some respects,

---

[3] In United States v. Williams, 41 MJ 134, 135 n.2 (CMA 1994), citing Christianson v. Colt Industries Operating Corp., 486 U.S. 800, 817 (1988), this Court recognized that the law-of-the-case doctrine does not preclude this Court from examining the legal ruling of a subordinate court in a case where the Judge Advocate General has not certified the issue.  However, we have made it clear that we are reluctant to exercise this power and, as a rule, reserve it for those cases where the lower court's decision is "clearly erroneous and would work a manifest injustice" if the parties were bound by it.  Christianson, supra.  In this case, the Government has not asserted that the lower court's ruling that error occurred was "clearly erroneous and would work a manifest injustice" if adopted for purposes of this case. Accordingly, we will apply the law-of-the-case doctrine.

10

Tamara's testimony also contradicted TR on several key points and provided significant support for several critical aspects of appellant's testimony. Specifically, Tamara testified that she invited TR to spend the night, contradicting TR's testimony that appellant invited her and undermining the Government's implication that appellant had designs on TR. Tamara testified that when she awakened and saw appellant on the mattress with TR, he apparently was asleep, and both he and TR were fully clothed. This testimony directly contradicted TR's testimony that both appellant and TR were awake and wholly or partially disrobed on the mattress when Tamara awakened, and it supported appellant's testimony that he was asleep and that he was fully clothed. Tamara's testimony that she shouted at appellant contradicted TR's testimony that appellant stopped touching her when Tamara said "Dad" in a soft, sleepy voice.

The heart of the defense was to portray TR as a passive, compliant child, who had embellished an inadvertent, innocent act in response to the intense, repeated, and suggestive questioning of a host of well-meaning adults. The admission of the hearsay statement of Mrs. Walker seriously undermined that defense, because it was used by the Government to show that, two days after the incident, long before anyone began questioning TR and long before she was subjected to the influences of well-meaning adults, appellant made a damaging admission to his wife. Even after trial counsel urged the members to make this inference, the military judge did nothing to prevent it. Under these circumstances, we are "left in grave doubt" whether the inadmissible statement unduly weighted the scales of justice

against appellant and substantially influenced the findings. Kotteakos, 328 U.S. at 765. The Government has not met its burden of persuading us otherwise. Accordingly, we must reverse.

Decision

The decision of the United States Army Court of Criminal Appeals is reversed. The findings and sentence are set aside. The record of trial is returned to the Judge Advocate General of the Army. A rehearing is authorized.

<u>United States v. Walker</u>, No. 01-0762/AR


    SULLIVAN, Senior Judge, with whom CRAWFORD, Chief

Judge, joins (dissenting):


<u>Harmless Error</u>

    I would affirm this case on the basis of harmless error, as

did the Court of Criminal Appeals.  <u>See</u> Article 59(a), Uniform

Code of Military Justice (UCMJ), 10 USC § 859(a).  I recognize

that this child sexual abuse case was a swearing contest between

appellant and TR, the alleged victim who was the eleven-year-old

neighborhood girlfriend of appellant's stepdaughter.  However,

appellant himself admitted that he was discovered sleeping on a

mattress late at night with this young girl, whom he hardly knew,

with his arm around her chest. (R.248, 399, 430, 406)  Moreover,

the erroneously admitted evidence (that appellant made statements

to his wife about this incident and his wife refused to disclose

their contents) did not materially prejudice appellant in the

context of other evidence in this case.


    As a starting point, I note the issue particularly granted

review in this case.  It asks "WHETHER THE ARMY COURT OF CRIMINAL

APPEALS ERRED WHEN IT HELD THAT THE ADMISSION OF THE STATEMENT OF

APPELLANT'S WIFE WAS HARMLESS ERROR."  In my view, this granted

issue raises two questions.  First, did the appellate court below

err in finding error in the admission of appellant's wife's

statement?  Second, assuming error, did the appellate court err

in finding such error was harmless?  Our case law supports my

United States v. Walker, No. 01-0762/AR

construction of the granted issue.  See United States v.

Williams, 41 MJ 134, 135 (CMA 1994).[*]


        In light of our decision in Williams, therefore, the

first question in this harmless error case is whether the Court

of Criminal Appeals was correct in holding that the trial judge

erred in admitting the challenged evidence noted above.  The

Court of Criminal Appeals specifically held that the admission of

this evidence, objected to by the defense on grounds of spousal

privilege (R.97), was error under Mil. R. Evid. 512(a), Manual

for Courts-Martial, United States (1998 ed.).  This rule states:

> **Rule 512.  Comment upon or inference from claim of privilege; instruction**
>
> (a)  <u>Comment or inference not permitted</u>.
>
>       *      *      *
>
>   (2) The claim of a privilege by a person other than the accused whether in the present proceeding or upon a prior occasion <u>normally is not a proper subject of comment by the military judge or counsel for any party</u>.  An adverse inference may not be drawn therefrom <u>except when determined by the military judge to be required by the interests of justice</u>.

---

[*] Admittedly, the Supreme Court in <u>Rose v. Clark</u>, 478 U.S. 570, 576 & n.5 (1985), construed its "limited" grant of review on "harmless-error analysis" more narrowly and declined to look at the underlying legal error.  However, it did so on the basis of Rule 14.1 of its own practice and procedure rules, which is not mirrored in our Court's rules.  ("Only the questions set out in the petition, or fairly included therein, will be considered by the Court.") Moreover, the Supreme Court has also recognized that decisions of this type are discretionary in nature, depending on the wording of the particular issue granted and the manner in which it was granted.  <u>See</u> Robert L. Stern et al., <u>Supreme Court Practice</u>, 190-95, 419-27, 635-36 (8th ed. 2002); <u>see</u> <u>also</u> Sup.Ct. Rule 24.1(a) ("At its option, however, the Court may consider a plain error not among the questions presented but evident from the record and otherwise within its jurisdiction to decide.").

2

(Emphasis added.)   I conclude that the Court of Criminal Appeals was correct in holding that error occurred under this rule because the military judge made no interest-of-justice determination.

I next turn to the question whether the appellate court below correctly held that the trial judge's error in admitting this evidence did not materially prejudice appellant's substantial rights.  See Article 59(a), UCMJ; Mil.R.Evid. 103(a), Manual, supra. I think that appellant was not so prejudiced for several reasons.

First, the evidenced statements of appellant's wife concerning her husband's words to her about this incident were neutral and repeated no express admissions by appellant to the charged offenses.  Any negative inference which could be drawn against appellant from this evidence was based on his wife's additional statement that she chose not to disclose his statements.  The majority has not explained why the members would resolve this serious case on such a speculative basis.

Second, additional evidence was admitted in this case showing that appellant's wife did otherwise disclose the contents of these statements and what the content of appellant's statements

was.  Appellant's stepdaughter, Tamara, testified that she woke up; saw her father laying very close to TR with his arm around her chest; asked him what he was doing; and he said "nothing" and rolled off the couch.  (R.440-41)  Tamara also testified that she told this to her mother, who said her dad said the same thing.  (R.442)  This testimony neutralized any adverse innuendo or speculation from the challenged evidence that appellant had admitted the charged offenses to his wife.

Third, as pointed out by the Court of Criminal Appeals, the alleged victim, TR, provided specific and detailed testimony as to what happened between her and appellant before Tamara woke up.  In my view, this powerful evidence was the basis for appellant's conviction, not the evidenced out-of-court statements of his wife, which might be construed as an assertion by her that appellant admitted the charged offenses.

Fourth, defense counsel did not request a protective instruction under Mil.R.Evid. 512(c).  It states:

> (c) Instruction.  Upon request, any party against whom the members might draw an adverse inference from a claim of privilege is entitled to an instruction that no inference may be drawn therefrom except as provided in subdivision (a)(2).

4

Accordingly, in these circumstances, I conclude that the military judge's error in admitting the challenged evidence was clearly harmless beyond a reasonable doubt.

Law of the Case

As an addendum to my opinion in this case, I wish to again note my disagreement with the majority's apparent reliance on the doctrine of law of the case to preclude issues of law from our appellate jurisdiction. See generally Article 67(c), UCMJ, 10 USC § 867(c). It has created a new rule undermining our power to recognize plain error on our own motion. Contra Rules 5 and 21(d), Rules of Practice and Procedure, United States Court of Appeals for the Armed Forces.

The law-of-the-case doctrine is based on the failure of counsel to challenge a particular ruling by a trial judge on appeal, and a subsequent judicial decision by an appellate court on other issues. See United States v. Castillo, 179 F.3d 321, 326 (5th Cir. 1999). The unappealed ruling of the trial court becomes the law of the case on remand and on further appeals which may later occur in that appellate court. See Morris v. American National Can Corp., 988 F.2d 50, 52 (8th Cir. 1993). Although this Court has used law-of-the-case language in addressing the permissible scope of our initial appellate review, I believe it is technically incorrect. See United States v. Hall, 56 MJ 432, 437 (2002) (Sullivan, S.J., concurring in part

5

and in the result); Crocker v. Piedmont Aviation, Inc., 49 F.3d 735, 739 (D.C. Cir. 1995); see generally 18B Charles Alan Wright et al., Federal Practice and Procedure § 4478 (2002).

To the extent the majority holds that the failure of appellate government counsel to contest the lower court's legal-error holding in his brief before this Court precludes us from looking at this issue, I also disagree. In this regard, I note that the majority recognizes our plain error approach to appellate review as delineated in United States v. Williams, 41 MJ at 135, a case decided after United States v. Grooters, 39 MJ 269 (CMA 1994). Nonetheless, it asserts that our review of the underlying error is not permitted where "the Government has not asserted that the lower court's ruling that error occurred was 'clearly erroneous and would work a manifest injustice' if adopted for purposes of this case." __ MJ at (10 n.3).

The scope of an appellate court's review is an important question and one usually imparted to the discretion of the court, not the whims of counsel. Statutes, rules of court, and decisional law impart this discretion. See generally Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Phillips Corp., 510 U.S. 27 (1993). I would rely on the UCMJ and our published rules and hold that the underlying question of legal error can be considered in a harmless error case on our own motion.

Article 67(c), UCMJ, states:

6

> (c) In any case reviewed by it, the Court of Appeals for the Armed Forces may act only with respect to the findings and sentence as approved by the convening authority and as affirmed or set aside as incorrect in law by the Court of Criminal Appeals.  In a case which the Judge Advocate General orders sent to the Court of Appeals for the Armed Forces, that action need be taken only with respect to the issues raised by him.  <u>In a case reviewed upon petition of the accused, that action need be taken only with respect to issues specified in the grant of review.</u>  The Court of Appeals for the Armed Forces shall take action only with respect to matters of law.

(Emphasis added.)

We have further promulgated a rule for our Court concerning the scope of our review, which states:

> **Rule 5. Scope of Review**
>
> The Court acts only with respect to the findings and sentence as approved by reviewing authorities, and as affirmed or set aside as incorrect in law by a Court of Criminal Appeals, except insofar as it may take action on a certificate for review or a petition for review of a decision by a Court of Criminal Appeals on appeal by the United States under Article 62, UCMJ, 10 USC § 862 (1983), or to grant extraordinary relief in aid of its jurisdiction, including the exercise of its supervisory powers over the administration of the UCMJ.  <u>The Court may specify or act on any issue concerning a matter of law which materially affects the rights of the parties</u>.

(Emphasis added.)  In my view, these legal authorities give this Court discretion to examine the underlying legal error, even if

7

<u>United States v. Walker</u>, No. 01-0762/AR

counsel does not make a plain error argument in his brief before this Court.

Finally, with respect to our decisional law, this Court in <u>United States v. Johnson</u>, 42 MJ 443, 446 (1995), clearly said: "It is solely within this Court's discretion under Article 67 to determine whether an issue is properly raised." <u>See</u> <u>also</u> <u>Silber v. United States</u>, 370 U.S. 717 (1962); <u>DeRoo v. U.S.</u> 223 R. 3d 919, 926 (8th Cir. 2000). In <u>Johnson</u>, we held that our review of a legal issue for good cause was not precluded by the appellant's failure to raise that issue before a Court of Criminal Appeals. Similarly, the failure of counsel to challenge the holding of the appellate court below in our Court should not defeat this Court's jurisdiction. We have always had the discretionary power to review plain error questions on our own motion. <u>See</u> Eugene R. Fidell, <u>Guide to the Rules of Practice and Procedure for the United States Court of Appeals for the Armed Forces</u>, 34-35 (9th ed. 2000); Homer E. Moyer, Jr., <u>Justice and the Military</u> § 2-795 at 636 (1972).

8