# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

_____

## No. ACM 39606 (rem)

_____

## UNITED STATES
*Appellee*

**v.**

## Robert J. HERNANDEZ
Airman Basic (E-1), U.S. Air Force, *Appellant*

_____

On Remand from
the United States Court of Appeals for the Armed Forces

Decided 28 February 2023[1]

_____

*Military Judge:* John C. Degnan.

*Approved sentence:* Dishonorable discharge and confinement for 60 days. Sentence adjudged 12 September 2018 by GCM convened at Vandenberg Air Force Base, California.

*For Appellant:* Major Stuart J. Anderson, USAF (argued); Colonel Michael A. Burnat, USAF; Major Jenna M. Arroyo, USAF; Major Rodrigo M. Caruço, USAF.

*For Appellee:* Major Jessica L. Delaney, USAF (argued); Lieutenant Colonel Joseph J. Kubler, USAF; Lieutenant Colonel Brian C. Mason, USAF; Major Joshua M. Austin, USAF; Major John P. Patera, USAF; Major Brittany M. Speirs, USAF; Captain Kelsey B. Shust, USAF; Mary Ellen Payne, Esquire.

*Amicus Curiae for Appellant:* A.J. Colkitt (law student, argued); Scott E. Thompson, Esquire (supervising attorney); Hannah Harris (law student); Ashley Pollard (law student)—Liberty University School of Law.

_____

[1] We heard oral argument in this case on 20 February 2020 at Liberty University School of Law, as part of this court's Project Outreach, when this case was originally submitted to this court.

*Amicus Curiae for Appellee:* Rebekah L. Meier (law student, argued); Rena M. Lindevaldsen, Esquire (supervising attorney); William B. Baker (law student); Tanner W. Havens (law student); Christiana H. Johnson (law student)—Liberty University School of Law.

Before JOHNSON, POSCH, and KEY, *Appellate Military Judges.*

Chief Judge JOHNSON delivered the opinion of the court, in which Senior Judge POSCH joined. Senior Judge KEY filed a separate dissenting opinion.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

JOHNSON, Chief Judge:

This case is before us for a second time. On 12 September 2018, a military judge sitting as a general court-martial convicted Appellant, contrary to his pleas, of one specification of wrongful use of cocaine in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a.[2] The military judge sentenced Appellant to a dishonorable discharge and confinement for 60 days, and the convening authority approved the sentence as adjudged.

Appellant raised two issues when his case was originally appealed. First, he asserted the military judge erred by denying his motion to suppress the results of his urinalysis. Second, he argued a sentence including a dishonorable discharge for a single use of cocaine is inappropriately severe. We concluded the military judge had erred by not suppressing the urinalysis results and set aside the findings of guilty and the sentence; therefore, we did not address whether the dishonorable discharge was inappropriately severe. *United States v. Hernandez*, No. ACM 39606, 2020 CCA LEXIS 362 (A.F. Ct. Crim. App. 8 Oct. 2020) (unpub. op.). The United States Court of Appeals for the Armed Forces (CAAF), however, disagreed, reversed that decision, and returned the record for further review by this court pursuant to Article 66(c), UCMJ, 10 U.S.C § 866(c). *United States v. Hernandez*, 81 M.J. 432, 442 (C.A.A.F. 2021). Appellant's case was re-docketed with this court, and Appellant thereafter raised a third issue: whether his conviction is legally and factually sufficient. Because the CAAF has resolved the suppression issue against Appellant, we turn to the sufficiency of his conviction and the severity of his sentence. Following this court's Article 66(c), UCMJ, mandate to affirm only so much of the

---

[2] All references in this opinion to the UCMJ and the Rules of Courts-Martial are to the *Manual for Courts-Martial, United States* (2016 ed.).

findings and sentence as we find should be approved, we affirm so much of Appellant's sentence which consists of 60 days of confinement and a bad-conduct discharge. Beyond our modification of the sentence, we find no error that materially prejudiced a substantial right of Appellant, and we affirm the findings.

## I. BACKGROUND

On 15 June 2017, in a previous court-martial, Appellant was sentenced to 15 months of confinement, a bad-conduct discharge, forfeiture of all pay and allowances, and reduction to the grade of E-1 after pleading guilty to cocaine-related offenses and other crimes.[3] Rather than being placed on appellate leave when he was released from that period of confinement in late February 2018, Appellant was returned to Vandenberg Air Force Base, California. His leadership initially required him to find his own lodging, but eventually assigned him an on-base dormitory room, which he moved into on 9 March 2018. Appellant was apparently assigned no military duties until the end of that month.

This appeal arises from Appellant's second court-martial. In early April 2018, after receiving a report of a strong scent of marijuana in the dormitory building where Appellant lived, security forces investigators went to the building to investigate. In order to assist their investigation, they brought Jager, a military working dog which had been trained to detect the scent of five different drugs. While inspecting the dormitory common areas and asking residents for consent to search their rooms, the investigative team saw Appellant walk out of his room. They stopped Appellant and asked him if they could search his room. Appellant agreed.

Jager was brought over to assist with the room search. When Jager and his handler walked up to the door, Jager alerted by sitting in front of Appellant, indicating to the handler that Jager had detected the scent of a drug. Appellant then consented to a search of his room, person, and his backpack. Nothing relevant was found on Appellant, in his backpack, or in his room. Although Jager did not alert to the scent of any drugs in Appellant's room, he did alert in front of Appellant a second time shortly thereafter.

The following day, the investigative team obtained authorization to seize Appellant's urine under the theory that Jager's alerts in the dormitory building

---

[3] Appellant was convicted of one specification of failure to go to his place of duty, two specifications of wrongfully using cocaine, one specification of wrongfully possessing cocaine, two specifications of wrongfully distributing cocaine, two specifications of wrongfully introducing cocaine onto a military installation, one specification of breaking restriction, and one specification of wrongfully endeavoring to impede an investigation, in violation of Articles 86, 112a, and 134, UCMJ, 10 U.S.C. §§ 886, 912a, 934.

and specifically on Appellant in conjunction with the smell of marijuana in the building provided probable cause to believe Appellant's urine would yield evidence of drug use. Pursuant to this authorization, Appellant provided a urine sample. Analysis of this sample performed at the Air Force Drug Testing Laboratory (AFDTL) determined Appellant's urine contained 3,651 nanograms per milliliter (ng/mL) of benzoylecgonine (BZE), a metabolite of cocaine. Under Department of Defense guidance, a result of 100 ng/mL or higher concentration of BZE means the sample is deemed to have tested positive for the metabolite. This is commonly referred to as the "cutoff level." Once Appellant's urinalysis results were reported to his command, he was ordered into pretrial confinement where he remained until the conclusion of his court-martial, a total of 140 days.

The Government's evidence at trial consisted primarily of the security forces investigation and urine sample collection process that led to Appellant's positive urinalysis, in addition to the expert testimony of Dr. DK, a forensic toxicologist familiar with AFDTL procedures.[4] Dr. DK explained that BZE is generally found in a person's urine only after that person ingests cocaine and his or her body metabolizes the cocaine. Dr. DK also testified about the procedures at the AFDTL, including the quality control and quality assurance measures in place to ensure accurate test results. Dr. DK testified that all quality controls appeared to have been properly applied and he detected no issues with the AFDTL's quality assurance in this case. At one point during Dr. DK's direct examination, trial counsel asked how the Department of Defense cutoff levels are determined. Dr. DK replied,

> It's determined at a level that we can easily detect with our instrumentation and it allows a bias, so that we don't go all the way down and catch people that could be extraneously exposed to cocaine. That was our theory when we designed the cutoffs years ago. I'm not sure it's as accurate as we thought it would be, but that was our rationale.

In response to trial counsel's question, "In your expert opinion, assuming the accused consumed cocaine and based on the date the sample was provided and the concentration of BZE in the accused's urine, would consumption have occurred during the charged timeframe?" Dr. DK answered, "Yes."

During cross-examination, Dr. DK testified that in comparison to other positive BZE urinalysis results, he considered the 3,651 ng/mL level in Appellant's

---

[4] The military judge told the parties he would only consider Jager's alerts for the limited purpose of establishing how the security forces members conducted their investigation. Appellant's prior court-martial and the offenses it covered were not introduced into evidence during the findings portion of Appellant's second court-martial.

sample "low." Dr. DK agreed it was possible for an individual to test positive at that level without being aware he had cocaine in his system. He agreed it was possible for external contamination of a urine sample to cause a positive BZE result at Appellant's reported level. Dr. DK further agreed that based on the test result alone, he could not say how Appellant came to have BZE in his urine, whether Appellant knowingly and intentionally ingested cocaine, or whether Appellant felt any effects from ingesting cocaine.

Dr. DK also acknowledged several studies related to the transferability of cocaine between individuals. One such study found that mixing 25 milligrams of cocaine into a soft drink and ingesting it resulted in a peak BZE concentration of 8,000 ng/mL and the subject feeling slight numbness in the mouth and a slight headache. Another study reportedly found 79 percent of a sample of dollar bills tested positive for the presence of cocaine, although the cocaine "doesn't come off very well," the bills in the study "showed no transfer," and Dr. DK would not expect a person handling a dollar bill to produce a 3,651 ng/mL result for BZE. Dr. DK agreed that cocaine applied to human skin could "lead to cocaine being found in the urine," though he did not recall what concentration of BZE had been found. He further acknowledged it was possible to transfer cocaine between humans by shaking hands or in saliva.

After the Government rested, the Defense did not introduce any evidence for findings.

## II. DISCUSSION

### A. Legal and Factual Sufficiency

#### 1. Law

We review issues of legal and factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) (citation omitted). "Our assessment of legal and factual sufficiency is limited to the evidence produced at trial." *United States v. Rodela*, 82 M.J. 521, 525 (A.F. Ct. Crim. App. 2021) (citation omitted), *rev. denied*, 82 M.J. 312 (C.A.A.F. 2022).

"The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Robinson*, 77 M.J. 294, 297–98 (C.A.A.F. 2018) (quoting *United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017)). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States*

*v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted). When examining the evidence in the light most favorable to the prosecution, "a rational fact-finder[ ] could use his 'experience with people and events in weighing the probabilities' to infer beyond a reasonable doubt" that an element was proven. *United States v. Long*, 81 M.J. 362, 369 (C.A.A.F. 2021) (quoting *Holland v. United States*, 348 U.S. 121, 140 (1954)). As a result, an examination for legal sufficiency "involves a very low threshold to sustain a conviction." *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019) (citation omitted).

"The test for factual sufficiency is 'whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt.'" *Rodela,* 82 M.J. at 525 (second alteration in original) (quoting *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987)). "In conducting this unique appellate role, we take 'a fresh, impartial look at the evidence,' applying 'neither a presumption of innocence nor a presumption of guilt' to 'make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt.'" *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (alteration in original) (quoting *Washington*, 57 M.J. at 399).

In order to find Appellant guilty of a violation of Article 112a, UCMJ, as charged here, the Government was required to prove, beyond a reasonable doubt, that Appellant used cocaine, and such use was wrongful. *Manual for Courts-Martial, United States* (2016 ed.) (*MCM*), pt. IV, ¶ 37.b.(2).

> "Use" means to inject, ingest, inhale, or otherwise introduce into the human body, any controlled substance. Knowledge of the presence of the controlled substance is a required component of use. Knowledge of the presence of the controlled substance may be inferred from the presence of the controlled substance in the accused's body or from other circumstantial evidence. This permissive inference may be legally sufficient to satisfy the [G]overnment's burden of proof as to knowledge.

*MCM*, pt. IV, ¶ 37.c.(10). "A urinalysis properly admitted under the standards applicable to scientific evidence, when accompanied by expert testimony providing the interpretation required by [*United States v. Murphy*, 23 M.J. 310, 312 (C.M.A. 1987)], provides a legally sufficient basis upon which to draw the permissive inference of knowing, wrongful use . . . ." *United States v. Green*, 55 M.J. 76, 81 (C.A.A.F. 2001) (citing *United States v. Bond*, 46 M.J. 86, 89 (C.A.A.F. 1997)); *see also United States v. Ford*, 23 M.J. 331, 337 (C.M.A. 1987) (noting the permissive inference has existed in the military justice system since 1955 and has found "longstanding and consistent judicial approval" in the military and civilian courts (citation omitted)).

**2. Analysis**

Appellant's claim that his conviction is neither legally nor factually sufficient was raised after the CAAF reversed this court's prior opinion. Drawing from a doctrine more commonly found in habeas litigation, the Government argues Appellant "should be procedurally defaulted" from raising this new claim under the theory that Appellant has not shown good cause for not raising the matter earlier and cannot demonstrate any actual prejudice. In support of this argument, the Government cites *United States v. Steele*, in which one of our sister courts applied this standard in the context of a direct appeal interrupted by a remand. 82 M.J. 695, 699–700 (A. Ct. Crim. App. 2022), *rev. granted*, No. 22-0254, 2022 CAAF LEXIS 780 (C.A.A.F. 2 Nov. 2022).[5] Regardless of the merits of extending this doctrine beyond the habeas arena, we are bound by Article 66(c), UCMJ, to "affirm only such findings of guilty . . . as [we] find[ ] correct in law and fact and determine[ ], on the basis of the entire record, should be approved." As a result, under the law applicable to this case, our review includes an analysis of the legal and factual sufficiency in each case presented to us on appeal, whether or not an appellant specifically alleges a legal or factual deficiency with his or her case.[6] *See, e.g.*, *United States v. Jensen*, No. ACM 38669, 2015 CCA LEXIS 377, at *11 (A.F. Ct. Crim. App. 3 Sep. 2015) (unpub. op.) (Martin, J., concurring in part) (concluding that even when a case is submitted on its merits, the Courts of Criminal Appeals must still determine "if the findings are both factually and legally correct"). Therefore,

---

[5] A three-judge panel of this court concluded we should adopt this standard in *United States v. Shavrnoch*, 47 M.J. 564, 564–65 (A.F. Ct. Crim. App. 1997), *aff'd in part and rev'd in part*, 49 M.J. 334 (C.A.A.F. 1998). However, in *Shavrnoch* the CAAF directed this court to consider an issue the appellant had not initially raised to this court, *id.*; the panel acknowledged "[a]n appellate court, especially one endowed with discretionary review, may *always* decide to review any issue it pleases." *Id.* at 569; *see also United States v. Shavrnoch*, 49 M.J. 334, 338 n.3 (C.A.A.F. 1998) ("[W]hatever validity, if any, the lower court's approach to appellate waiver might have in other contexts, it cannot apply to a remand order from this [c]ourt . . . ." (Citations omitted)); *cf. United States v. Johnson*, 42 M.J. 443, 446 (C.A.A.F. 1995) ("As far as the implication that an issue not raised at the lower level cannot be raised before us, we are sure the court below would not sanction a 'potted plant' role for appellate counsel with regard to new issues." (Footnote omitted)).

[6] Effective 1 January 2021, Congress modified Article 66, UCMJ, to provide, in pertinent part, "In an appeal of a finding of guilty under subsection (b), the Court [of Criminal Appeals] may consider whether the finding is correct in fact upon request of the accused if the accused makes a specific showing of a deficiency in proof." *See* the National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283 § 542(b)(1)(B), 225 Stat. 6395 (3 Jan. 2020); *see also* 10 U.S.C. § 866(d)(1).

we decline to find procedural default with respect to Appellant's legal and factual insufficiency claims, despite the fact they were not raised in his initial assignments of error brief.

Appellant's argument is essentially that the Government failed to prove he knowingly ingested cocaine, insofar as the Government's evidence of Appellant's use solely consisted of positive urinalysis results. We disagree.

The Government's evidence, as explained by Dr. DK, established that Appellant's urine tested positive for the cocaine metabolite BZE at a concentration of 3,651 ng/mL. The evidence indicated no apparent flaws in the chain of custody or testing of the sample. The BZE concentration might have been "low" in comparison to other positive results Dr. DK knew of, but it was nevertheless substantially higher than the 100 ng/mL cutoff level created to exclude individuals who were "extraneously exposed to cocaine." The military judge, as trier-of-fact, could reasonably apply the permissive inference explained in the Manual and in *Green* to find the urinalysis result proved Appellant knowingly and wrongfully used cocaine beyond a reasonable doubt.

On cross-examination, Dr. DK agreed that the test result itself did not prove how the BZE came to be present in Appellant's urine. He agreed that studies indicated cocaine was transferable between humans in multiple ways, and that it was possible to contaminate urine samples. However, proof beyond a reasonable doubt does not require proof that overcomes every *possible* doubt. *See United States v. McClour*, 76 M.J. 23, 24 (C.A.A.F. 2017) (quoting the Air Force reasonable doubt instruction). It is enough that the evidence firmly convinces the trier-of-fact of the accused's guilt. *See id*. The military judge could reasonably conclude none of the studies cited by trial defense counsel or hypothetical sources of innocent ingestion or contamination, under the circumstances of this case, raised a reasonable doubt that would dissuade him from applying the permissive inference that BZE was present in Appellant's urine at a concentration of 3,651 ng/mL because Appellant knowingly and wrongfully used cocaine.

Having given full consideration to Appellant's arguments, and drawing every reasonable inference from the evidence in favor of the Government, we conclude the evidence was legally sufficient to support Appellant's conviction. Additionally, having weighed the evidence in the record of trial, and having made allowances for the fact that the trial judge personally observed the witnesses, we also find the evidence factually sufficient.

**B. Sentence Severity**

**1. Law**

We review issues of sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006) (citation omitted). Our authority to determine sentence appropriateness "reflects the unique history and attributes of the military justice system, [and] includes but is not limited to considerations of uniformity and evenhandedness of sentencing decisions." *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001) (citations omitted). We may affirm only as much of the sentence as we find correct in law and fact and determine should be approved on the basis of the entire record. Article 66(c), UCMJ. "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009) (per curiam) (citations omitted). Although we have great discretion to determine whether a sentence is appropriate, we have no power to grant mercy. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010) (citation omitted).

"A dishonorable discharge should be reserved for those who should be separated under conditions of dishonor, after having been convicted of offenses usually recognized in civilian jurisdictions as felonies, or of offenses of a military nature requiring severe punishment . . . ." Rule for Courts-Martial (R.C.M.) 1003(b)(8).

**2. Analysis**

Appellant contends the portion of his sentence extending to a dishonorable discharge is inappropriately severe. He emphasizes that the sole offense for which he was convicted and sentenced in the instant court-martial was a single wrongful use of cocaine. Appellant acknowledges he had a substantial history of prior misconduct, including not only the offenses for which he was convicted at his prior court-martial but a variety of other UCMJ violations including *inter alia* drunk driving, dereliction of duty, and making false statements as reflected in a nonjudicial punishment action, an administrative demotion, and several letters of reprimand and counseling. However, Appellant notes all of this earlier misconduct occurred prior to, and was considered by, his first court-martial, which did not adjudge a dishonorable discharge. Appellant also contends his offense was distinctly non-aggravated in that Appellant had been given essentially no military duties and his offense had no apparent adverse mission impact.

In response, the Government notes, *inter alia*, that the UCMJ authorizes a maximum punishment that includes a dishonorable discharge and confine-

ment for up to five years. *MCM*, pt. IV, ¶ 37.e.(1)(a). The Government emphasizes Appellant's prior misconduct and the repeat nature of his offense. The Government also contends Appellant's sentencing case was weak, consisting primarily of Appellant's oral and written unsworn statements.

Although not cited by Appellant, we note that simple possession of cocaine in California under the circumstances present here would apparently be punishable under state law by "imprisonment in a county jail for not more than one year." CAL. HEALTH & SAFETY CODE § 11350(a) (Deering 2018). Accordingly, it would not appear to qualify as a felony in California. *See* CAL. PENAL CODE § 17(a) (Deering 2018).

Based on our collective experiences as judge advocates and appellate judges, and taking into account R.C.M. 1003(b)(8), the nature of the offense, the principles of sentencing, and all matters contained in Appellant's record of trial, we conclude that Appellant's sentence to a dishonorable discharge for a single incident of drug abuse—under the facts presented here—is inappropriately severe.[7] We conclude that a sentence of a bad-conduct discharge and confinement for 60 days should be affirmed.

### III. CONCLUSION

We affirm only so much of the sentence that includes a bad-conduct discharge and confinement for 60 days. The approved findings and sentence, as modified, are correct in law and fact and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the approved findings of guilty and the sentence, as modified, are **AFFIRMED.**

KEY, Senior Judge (dissenting):

I am not convinced the Government proved Appellant knowingly ingested cocaine. I would find Appellant's conviction factually insufficient, and I therefore dissent. Further, although I recognize the permissive inference employed

---

[7] *See, e.g.*, *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999) (citing *United States v. Olinger*, 12 M.J. 458, 461 (C.M.A. 1982) ("Under Article 66(c), [UCMJ,] Congress has furthered the goal of uniformity in sentencing in a system that values individualized punishment by relying on the judges of the Courts of Criminal Appeals to utilize the experience distilled from years of practice in military law to determine whether . . . [a] sentence was appropriate."); *see also United States v. Wacha*, 55 M.J. 266, 267 (C.A.A.F. 2001) (citing *Lacy*, 50 M.J. at 288) (affirming the importance of the "accumulated knowledge" of "experienced Court of Criminal Appeals judges" in assessing for sentence appropriateness).

in this case is ensconced in military law, I question its force in cases where no evidence of drug use other than a positive urinalysis result is admitted.

The Due Process Clause of the Fifth Amendment[*] "requires the prosecution to prove beyond a reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged." *United States v. Girouard*, 70 M.J. 5, 10 (C.A.A.F. 2011) (quoting *Patterson v. New York*, 432 U.S. 197, 210 (1977)). The United States Supreme Court has described this burden as "vital" and "indispensable," *In re Winship*, 397 U.S. 358, 363–64 (1970), and as one "our system of criminal justice deems essential," *Mullaney v. Wilbur*, 421 U.S. 684, 701 (1975). This is due to the fact an accused facing prosecution "has at stake interests of immense importance, both because of the possibility that he may lose his liberty upon conviction and because of the certainty that he would be stigmatized by the conviction." *Winship*, 397 U.S. at 363.

Permissive inferences do not impermissibly shift the burden of proof, so long as they "leave[ ] the trier of fact free to credit or reject the inference" and there is some "rational way the trier could make the connection permitted by the inference." *Ulster County Court v. Allen*, 442 U.S. 140, 157 (1979). A permissive inference violates due process "if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the [factfinder]." *Francis v. Franklin*, 471 U.S. 307, 314–15 (1985) (citation omitted).

The evidence in this case demonstrated Appellant had benzoylecgonine in his urine. This—standing alone—is not an offense under the Uniform Code of Military Justice. Instead, to obtain a conviction as charged here, the Government was required to prove Appellant actually used cocaine, that he knew he used cocaine, and that such use was wrongful. Even assuming Appellant had ingested cocaine by virtue of the presence of benzoylecgonine in his urine, the Government produced no evidence as to when, where, how, or with whom Appellant consumed the cocaine. No cocaine was ever found, nor did Jager, the military working dog, alert to any scent of controlled substances within Appellant's room. The Government called no witnesses to say they saw Appellant using, possessing, trying to obtain, or even talking about cocaine. The Government did not introduce so much as a single statement from a witness indicating Appellant was interested in or contemplating the possibility of using the drug. No evidence was offered regarding how the bottle containing Appellant's urine sample was manufactured, where it came from, by what means it was transported to Vandenberg Air Force Base, or who came into contact with it during that chain of events, even though Dr. DK testified the amount of cocaine

---

[*] U.S. CONST. amend. V.

needed to contaminate the urine sample would probably be invisible to the human eye. Instead, the Government essentially just produced Appellant's urinalysis result and rested its case.

The Government may, of course, meet its burden of proof through circumstantial evidence. *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019) (citations omitted). The presence of benzoylecgonine in Appellant's urine is some circumstantial evidence of Appellant having knowingly used cocaine. But standing alone, this evidence falls far short of proving such knowing use beyond a reasonable doubt. As Dr. DK testified, Appellant may very well have ingested cocaine unwittingly. Similarly, Dr. DK said it was possible Appellant never felt any effects of the drug, based upon the level demonstrated by his urinalysis results. Moreover, Dr. DK agreed urinalysis results could be positive for cocaine after merely coming into physical contact with someone who had used the drug. Although the 100 nanograms per milliliter cutoff was originally selected to avoid "catch[ing] people that could be extraneously exposed to cocaine," Dr. DK volunteered that he was "not sure it's as accurate as we thought it would be, but that was our rationale." The Government offered no more evidence on that point.

Nonetheless, the Government in this case asked the military judge to make the leap—and the military judge apparently did so—from the presence of benzoylecgonine in Appellant's urine to a finding that Appellant knowingly and wrongfully used cocaine. The notion that such a leap can lead to a criminal conviction without any other evidence seems somewhat foreign outside the military, with the exception of parole revocation proceedings. *Cf. State v. Flinchpaugh*, 659 P.2d 208, 212 (Kan. 1983) (concluding that while discovery of a drug in a person's blood is circumstantial evidence the person once possessed the drug, such is insufficient to prove guilt beyond a reasonable doubt due to the absence of proof of knowledge, as "[t]he drug might have been injected involuntarily, or introduced by artifice, into the defendant's system"); *United States v. Blackston*, 940 F.2d 877, 890 (3d Cir. 1991) (concluding that positive urinalysis is adequate proof of use, in part due to the lower burden of proof—preponderance of the evidence—at a supervised-release revocation hearing); *but see Green v. State*, 398 S.E.2d 360, 361–62 (Ga. 1990) (finding presence of metabolites in bodily fluid is circumstantial evidence of possession and then upholding possession conviction based on urinalysis). This leap allows the Government to dispense with the ordinary requirement of shoring up its charges with proof of each element and instead hold up lab results and ask the factfinder to infer the Government has met its burden.

In so relieving the Government of its burden to introduce evidence corroborating the results of the urinalysis, Appellant was effectively saddled with the daunting task of proving he was unaware he used the drug. Fulfilling this task

seems all the more improbable in light of the fact our superior court, the United States Court of Appeals for the Armed Forces (CAAF), has held that whether or not Appellant actually felt any effects from the drug is virtually immaterial when non-novel scientific testing procedures are employed. *United States v. Green*, 55 M.J. 76, 81 (C.A.A.F. 2001). In an earlier opinion, the CAAF explained,

> Drug testing . . . is designed and performed by humans and, as such, is fallible. The possibility of a positive result from an error in the test or from unknowing ingestion of a substance that does not trigger any reaction on the part of the servicemember is the worst nightmare of every good servicemember and a cause of serious concern to the judicial system.

*United States v. Campbell*, 50 M.J. 154, 160 (C.A.A.F. 1999), *recon. granted*, 52 M.J. 386 (C.A.A.F. 2000) (per curiam). Yet, within two years, that concern apparently fell by the wayside, leading a dissenting judge to argue that "when a court-martial may convict an accused based solely on the presence of a metabolite in the body, we have created an absolute-liability offense, no matter how we rationalize it or what we call it." *Green*, 55 M.J. at 86 (Gierke, J., dissenting). This highlights the question that military appellate courts seem to shy away from: just how would an accused prove he did not knowingly use the drug found in his urine? Proving that negative seems to be a near insurmountable hurdle, for an accused's testimony that he had no knowledge of how his urinalysis returned a positive result would be unhelpful to his cause. The difficulty in answering this question demonstrates the lopsided burden placed on an accused's shoulders when the Government relies on the permissive inference at issue here.

Like every other servicemember, Appellant did not forfeit his due process rights when he volunteered to serve in the United States military. Before saddling Appellant with a federal conviction for drug use, I submit the Government should be required to actually prove he knowingly ingested the drug, and not simply that he has the drug's metabolite in his system. I would advocate for the CAAF to revisit its law in this arena and place the burden of proof on the Government to provide independent evidence corroborating urinalysis results in order to prove the "knowing" element of wrongful use. My dissenting opinion in this case should not be read to condone or excuse substance abuse by servicemembers—the Government has the ready ability to administratively remove drug users from the ranks with a lower burden of proof—but rather as a call for the rigorous respect of the due process rights of those who serve before finding them guilty at a court-martial. Appellant's positive urinalysis should have been the starting point for the investigation into his alleged drug use. Instead, it was the end, and Appellant stands a convict for it. I recognize the

permissive inference is available to the Government under the current state of the law, but under the facts presented here, I would not draw it. I would find Appellant's urinalysis, standing alone, is factually insufficient to prove his knowing use of cocaine. Therefore, I dissent.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court